Susan O. Adams, Administratrix, v. The Chicago, Milwaukee & St. Paul Railway Company, Appellant.

**Railroads:** EVIDENCE.  General testimony that one killed by an engine, and charged with contributory negligence, was always careful and on the lookout for danger is inadmissible when not introduced to show the earning capacity of deceased, and where there are witnesses to facts attending the injury.

EXPERT TESTIMONY by one who claims to have signalled an engine from a distance of twenty-five feet, to stop, as to the distance at which he could stop an engine running at a certain speed, in case he saw a signal twenty-five feet away, is inadmissible when the engineer did not see the signal.

PROVING PUBLIC TRAVEL.  It is not permissible to show that a given street was much used for public travel, when deceased was struck so far from it that an engine running at unlawful speed could have slowed up before it reached that street.

*Appeal from Woodbury District Court.*—Hon. A. Van Wagenen, Judge.

Monday, January 28, 1895.

S. H. Adams was killed by being knocked down and run over by one of defendant's locomotive engines in its switch yards at Sioux City. The plaintiff is his widow, and administratrix of his estate. This action was brought to recover damages for causing the death

of Adams. From a judgment upon the verdict of a
jury the defendant appeals.—*Reversed.*

*H. H. Field* and *Taylor, Shull & Farnsworth* for
appellant.

*John Wallace* and *R. H. Brown* for appellee.

Rothrock, J.—I. Adams was what was known
as "night yard master," and had charge of the making
up of freight trains and switching cars in the yard.
His watch, or time of service, commenced at six o'clock
in the evening. On the evening of the fifth of August,
1891, he went to his work at the usual time, and at the
time of his death, which occurred at about seven
o'clock, and before the dusk of the evening, he was in
charge of a switching crew, consisting of an engineer,
fireman, and one or two switchmen, making up a
freight train. The switch engine was drawing eight
or ten freight cars, and the deceased was riding on the
footboard at the rear of the engine. He left the engine
for the purpose of signaling for a stop to uncouple and
throw some cars backward on another track. He went
quickly across, and stood between the rails of another
track, and was in the act of signaling to the engineer
on the switch engine, when he was struck by a backing
engine on the track on which he was standing, knocked
down, run over, and killed. It is charged in the
petition that the backing engine was negligently oper-
ated, in that it failed to give signals for danger, and
to stop in obedience to signals given for that purpose
purpose; that the engine was backing at a rate of speed
in excess of six miles an hour, in violation of an ordin-
ance of the city; and that the engineer in charge of
the engine willfully and negligently failed to stop the
same after he discovered the perilous position of

Adams; and that, if the engine had been promptly
stopped when Adams was struck by the rear end of the
tender, and went under, he would not have received
a mortal injury. The defendant answered by a gen-
eral denial of negligence, and a denial of the averment
of the petition that Adams was free from contributory
negligence.

It is not necessary to give a detailed description
of the yards and railroad tracks at the place where
the casualty occurred. The grounds upon which we
place our decision do not require that more than a gen-
eral statement be made. The two main tracks of the
defendant's railroad where the accident occurred are
laid east and west on Second street. This street is
crossed at right angles by Steuben street, Lafayette
street, Clark street, and other streets. Second street,
at the place of the accident, and for some distance east
and west, was given up to railroad purposes. There
was no general travel along it. The switch engine on
which the deceased was riding came up from the south-
east on a side track, and on to the south main track,
and was moving west. The road engine by which
Adams was killed was backing down on the north main
track from the west, so that the two engines were mov-
ing in opposite directions. A short time before the
accident a regular passenger train came in from the
east along the northerly track, and passed on west
some distance to the passenger depot, where the engine
was detached, and backed down over the same track
to the roundhouse, and it was on its way to the round-
house when it struck Adams. This was the usual and
ordinary method of operating the passenger train and
engine. The train was not belated on that evening.
It may have been a very few minutes late. It was due
at the passenger depot at six thirty-five P. M., and the
accident happened at seven o'clock, or very near that

time.   There is some contention in behalf of appellee
that the return of the engine was from fifteen to
twenty-five minutes after its usual time.   But this is
not sustained by the evidence.   There is no question
but that the deceased knew that the engine backed
down a few minutes before or after seven o'clock.   He
was an experienced railroad operative, and had been
night yard master in that yard for about eighteen
months.   There is a conflict in the evidence as to the
exact point on the track where Adams got off the foot-
board of the switch engine.   There is also a dispute as
to the speed of the road engine, and as to how far it
was distant from Adams when he was on the track
where the fatality occurred.   The very decided weight
of the evidence, so far as the number of witnesses is
concerned, is that the engine was not backed at a speed
exceeding six miles an hour, and that the fireman was
in his proper place, and ringing the bell, on the engine,
for some distance before it reached the place where
it struck Adams, and that Adams came on the track
not to exceed ten feet from the rear of the tender.   A
majority of the witnesses fix it at a much less distance.
The fact is apparent from all the evidence that he was
so close to the engine that from the time he went on the
track till he was struck the lapse of time was so incon-
siderable that it was practically impossible to estimate
it by seconds.   And there is a decided preponderance
of evidence that both the engineer and fireman on the
engine were in their proper places, and on the lookout
backwards, and that the engine was stopped as soon
as it could be after the fireman discovered Adams pass-
ing on to the track.   It will be observed from this brief
statement of our views of the evidence in the case that
the question of the contributory negligence of Adams
was a most important matter for the consideration of
the jury.

II.   The plaintiff called several witnesses, who were interrogated as to Adams being a careful and prudent man, and watchful for danger, about his work.   In other words, the witnesses were questioned as to the care of Adams when about his work, and his watchfulness to avoid danger.   This line of evidence was objected to, and the witnesses, without answering as to any fact, responded to the questions in as general a way as the questions were put; that he was always careful, and on the lookout for danger.   We have not given the language of the questions and answers, but have stated the substance of the examinations.   Objections were made to this line of evidence, and the objections were overruled, and proper exceptions were taken.   We can discover no grounds upon which we can sustain these rulings of the court. They appear to have no support in adjudged cases, and, even if they had, they would not commend themselves to us as founded on sound reason.   Such a line of evidence raises a collateral and remote issue, which, if sustained, would lead to all manner of complications. Of course, if the general character of the deceased as to care to avoid injury may be shown by witnesses, the defendant would have the right to rebut that by calling witnesses to give their opinions or estimate of him as a reckless and careless man, and it would be competent for the defendant to prove by witnesses that the coemployes charged with negligence were always careful to perform their duties.   We will cite but a few of the many cases which hold that such evidence is incompetent:   *Chase v. Railway Co.*, 77 Me. 62; *Scott v. Hale*, 16 Me. 326; *Morris v. Town of East Haven*, 41 Conn. 252; *McDonald v. Savoy*, 110 Mass. 49; *Railroad Co. v. Clark*, 108 Ill. 113.   Counsel for appellee seek to sustain the ruling of the court upon several grounds.   It

is urged that the evidence was competent to show the loss to the estate of the deceased. The ready answer to this is that the record shows that when this line of testimony was introduced it was not in connection with evidence of the capacity of the deceased to earn money. And the ground is taken that the evidence was competent, in view of the facts and circumstances of the case, "as tending to show the exercise of due care on the part of the deceased." We are cited to a large number of cases, which it is claimed are directly in point on this question. We confess that we have not examined all of the cited cases. Such as we have examined do not support the rule, and in some of them the question is not presented nor considered. Most of them are founded upon evidence of facts, as distinguished from conclusions or opinions, as to the careful habits of the person injured or killed. There are cases which hold that evidence of this character is proper when there are no witnesses to facts attending the accident. *Railway Co. v. Clark, supra; Cassidy v. Angell,* 12 R. I. 447. We need not consider that question, as it is not in this case. Some three or four witnesses testified to the facts immediately attending the casualty. One witness stated positively that he saw the deceased step from the footboard of the switch engine and go on the track, where he was almost instantly knocked down by the moving tender. Others testified that they saw him on the track immediately before and at the time he was struck. Counsel for appellee insist that the evidence under consideration was proper, because there was a conflict in the evidence on the facts attending the accident. We discover no reason for the application of any such a distinction. It is due to the learned district judge to say that it appears from the record that objections to the evidence were overruled with serious

doubts as to the correctness of the rulings, and with the statement to appellee's counsel that, if they were willing to insist on it, he would overrule the objections.

III.  Adams was struck by the tender some distance west of Steuben street, which crossed Second street at right angles.   The plaintiff was permitted to introduce evidence that Steuben street was much used for public travel, and that there was a street railroad thereon.   We think this was improper.  The distance from the place of the accident to Steuben street was such that, even if the engine was moving at an unlawful rate of speed, there was ample time and distance to slow up before reaching the line of Steuben street.

IV.  The plaintiff was permitted to introduce the testimony of a witness as to the distance in which he could stop an engine running six and twelve miles an hour in case he saw a man twenty-five feet north, giving signals, and calling out to him to stop.  This testimony was objected to, and complaint is made of the ruling.  We think the evidence should have been excluded.  It was founded on the testimony of a witness named Allen, who testified that he stood twenty-five feet from the track, and called and signaled to stop.  There is a dispute as to where Allen stood,—whether directly opposite to the engine or to the west of it.  In any event, it was error to take the evidence of an expert on any such supposed state of facts, because there was no evidence that the calling was heard or signals seen by the engineer.  Allen testified as a witness on that question as follows: . "I don't know whether the engineer heard me or not.  Afterward I heard the engineer throw the lever.  I could hear the noise of that."  The engineer testified that he neither heard Allen nor saw the signals, but that he had his head out of the cab window, looking ahead, as

was his duty; and that he used every effort to stop the engine the moment the call came from the fireman on the south side of the engine,—the side from which Adams entered on the main track.

V. Many other alleged errors are discussed by counsel, which do not demand special mention, nor separate consideration. The charge of the court to the jury appears to us to be correct; at least we discover no error therein. It is strongly urged on behalf of appellant that the court should have sustained a motion directing a verdict to be returned against plaintiff. We do not pass on that question, as the evidence upon another trial may not be the same as on the trial from which this appeal was taken. We think it is not improper to say that the evidence in this record does not show that the deceased's life could have been saved by any act of the engineer after the deceased was struck by the tender. Such a theory, so far as this record shows, is founded on the merest supposition or conjecture. The judgment of the District Court is *reversed.*