SUSIE PEARSON, Administratrix of the Estate of O. E. PEAR-
SON, Appellant, v. HENRY WILCOX and CHARLES
WILCOX.

**Action for Death:** EVIDENCE: *Directed verdict.* In an action under
Code, of 1873, section 2526, authorizing an action for death, by an
administratrix for the death of her intestate, caused by the
wrongful acts of defendants in pushing him off a stairway, the
testimony of the only witness who saw the occurrence failed to
show the cause of decedent's fall, or that it was caused by any
wrongful acts of defendants or either of them and it was only by
conjecture that the fall could be traced to any act of defendants.
*Held*, there was no error in directing a verdict for defendants.

*Appeal from Polk District Court.*—HON. T. F. STEVENSON,
Judge.

THURSDAY, OCTOBER 5, 1899.

PLAINTIFF states her cause of action in two counts,—in
the first, as follows: "That on the 19th day of March, A. D.
1896, the said defendants pushed, shoved, and threw the said
O. E. Pearson out of and from his place of business, on the
northwest corner of East Sixth and Locust streets, in the city
of Des Moines, Polk county, Iowa, and off the top of the
stairs and over the baluster of said place of business, onto the
sidewalk; that the said O. E. Pearson was so injured and hurt
by said acts of the said defendants and said fall that he
expired from said injuries on the morning of the 20th of
March, A. D. 1896; that said act of the said defendants in so
pushing and shoving the said O. E. Pearson out of his place of
business, and over and off the said stairway and baluster was
unlawful, willful, and malicious, and that said death was
the direct result of said unlawful act of the said defendants;
that said killing was not the result of any carelessness or neg-
ligence on the part of the said O. E. Pearson; that said O.

E. Pearson's estate was damaged in the sum of twenty-five thousand dollars ($25,000)." In the second count the cause of action is stated substantially the same. The defendants answered, in effect denying every allegation contained in the petition, and alleging as follows: "That they believe it to be true that the said O. E. Pearson died on or about the 20th day of March, 1896, as the result of injuries received by him in falling from the stairway leading to his place of business, on the northwest corner of East Sixth and Locust streets, in the city of Des Moines, Polk county, Iowa, but they aver that said injuries were received by and through the unlawful, careless, and negligent conduct of the said O. E. Pearson in assaulting one of these defendants, to-wit, the said Charles Wilcox; and they aver that the said O. E. Pearson in making said assault in some manner slipped and fell from the said stairway, and received the injuries from which he afterwards died." At the close of the evidence on behalf of the plaintiff the defendants moved for a verdict on the ground that there was no evidence to sustain the allegations of the petition, which motion was sustained, and verdict and judgment rendered for the defendants accordingly. Plaintiff appeals. —*Affirmed.*

*James Nugent* and *Read & Read* for appellant.

*Carroll Wright* for appellees.

GIVEN, J.—The only question presented on this appeal is whether the court erred in sustaining the defendants' motion for a verdict. Appellant's counsel insist that the evidence taken in connection with the admissions in the answer, made a *prima facie* case, and that the court erred in not submitting the case to the jury. This action was brought under section 2526 of the Code of 1873, and it is undisputed that, to entitle the plaintiff to recover, she must show that the death of her intestate was caused by the wrongful act of the defendants, or one of them. It appears without conflict that on and

prior to the 19th day of March, 1896, the deceased's place
of business was on the second floor of a two-story building
on the northwest corner of East Locust and Sixth streets in
the city of Des Moines, which was reached by an outside
wooden stairway to the east side of the building, ascending
from the south to the landing, 16 feet above the sidewalk,—
at the top, 2 feet 10 inches wide, and 8 feet 10 inches long.
The stairs and landing were surrounded on the east and
north by a wooden railing 2 feet 8 inches high, and closely
boarded up under the railing. The deceased and the defend-
ants were left by persons present in one of the rooms of the
deceased engaged in conversation, which was apparently
about some business matter and friendly. A witness in the
room below noticed the shuffling of feet above, as of persons
engaged in a scuffle; and soon thereafter the three men came
onto the platform, and were scuffling, when from some cause
the deceased slid down the railing from near the top thereof
to a point near the bottom, and fell from the railing to the
sidewalk, receiving injuries of which he soon thereafter died.
So far as appears, Mr. A. W. Larson was the only person
who saw what occurred; and it is to his testimony, the
answer, and such corroboration or explanation of his testi-
mony as may appear, that we must look to solve the ques-
tion whether there was evidence tending to show that the
death of Mr. Pearson was caused by the wrongful act of the
defendants, or either of them. It will be observed that the
answer does not admit that the death of Mr. Pearson was
caused by any act of the defendants, or either of them. Mr.
Larson was examined at great length, and frequently pressed
to state what caused the deceased to fall as he did, yet his
answers failed to show what the cause was. We have exam-
ined his testimony with care, to see whether it might be found
therefrom that the deceased's fall and consequent death were
caused by any wrongful act on the part of the defendants,
or either of them. This unfortunate affair occurred between
six and seven o'clock on the evening of March 19, 1896, and

Mr. Larson seems to have given as full and candid a statement of what he saw as it was possible for him to give. A few of the answers show conclusively that he was unable to state what it was that caused the deceased to fall. We quote some of them: "Q. Did you see or could you determine how he came to start,—how he came to fall over there? A. No, sir; I could not see that, but it seemed as if he fell a little forward, that way, and looked as if he would grab for the railing. Q. Tell just what you saw. A. They were scuffling, and one of the men got over in this position,—like this; just over like that; and his feet took a turn to the street,—so; his head struck the sidewalk before his feet. I could see him come down in that position. Q. Just describe how he came to fall over there, if you know it. A. Of course, that is pretty hard for me to state how. It was in the scuffle he got over there. Q. Just when he went over the railing, what were they doing? A. When I was looking at him coming down, the minute he struck the ground I looked up, and I saw one man at the top of the stairs and the other two or three feet down. Q. I know, but at the moment he started to come over the railing you saw him? A. Yes, sir. Q. What were the other two men doing at that time; that is, before he struck the sidewalk? A. I do not know how I can explain it any different from what I have. Court: Just tell the position of all three as near as you can. A. That is something I could not possibly do. You can put two or three men in a little corner here, and see them move forwards and back, and take a man coming across the street and take notice of it quick. Q. But while Mr. Pearson was yet on the railing where were the other two men? A. They were scuffling up there. Q. At the time Mr. Pearson went over the railing they were scuffling? A. I guess that is right. Q. Now, I want you to tell the jury, not the position of the two men when Mr. Pearson struck the sidewalk, but the position of the men when Mr. Pearson first started over the banister. A. I do not see in which way

I can explain it any more than what I have, I am sure, because it went all of an instant. It is pretty hard to tell just how they stood. Court: They want to know what was the position and what those two men were doing just at the time Pearson started to go over the banister, not after he had fallen. A. Really, I do not know what kind of an answer you want. I do not know that I can answer it any different that I can remember now. Q. Were they doing anything at the time he passed over the railing? Not when he struck the sidewalk, but when he passed over the railing were they doing anything? A. I do not know. Either in the fall this man got pulled down that far, or if he came down of his own accord, I cannot say. Q. How did he get over the banister? That is the question. How did you see him get over the banister? A. He was either pushed or fell,—one of the two. Q. At the time Mr. Pearson started to fall over the railing, state whether or not you saw anybody push him or shove him. A. Well, in the scuffle it was hard to tell who was coming over, but they were trying to get each other over forward and back, and Pearson was the one that came over. That is as near as I can explain it." · While it is true that we have set out but a small portion of Mr. Larson's testimony, a careful reading of the whole has failed to show the cause of Mr. Pearson's fall, or that it was caused by any wrongful act of the defendants, or either of them. There is some evidence tending to show that Mr. Pearson had received an injury near one of his eyes, and it is argued that this shows that he had been struck a violent blow. It is doubtful whether there was any injury to the eye, but, if so, it was such as might have been caused by the fall. It is also insisted that Mr. Pearson was a man of such short stature that he could not have fallen upon the railing except by some act upon the part of the defendants, or one of them. If this be true, it does not necessarily follow that such an act was wrongful. The evidence clearly fails to show the cause of Mr. Pearson's fall, and it is only by conjecture that it can be traced to any

act of defendants. Our conclusion is that the plaintiff failed to establish her cause of action, and that there was no error in directing the verdict for the defendants.—AFFIRMED.