FRANK KEARNEY, Appellee, v. TOWN OF DE WITT, Appellant.

**NEGLIGENCE: Proximate Cause—Equally Consistent Theories.** Proximate cause for a damage may not be said to be established when the facts and circumstances shown are equally consistent with both of two theories: one assigned as the basis for recovery, and one not so assigned.

Headnote 1:   29 Cyc. p. 625.

*Appeal from Clinton District Court.*—A. P. BARKER, Judge.

FEBRUARY 17, 1925.

ACTION for damages caused by pollution of water by defendant's permitting sewage to escape therein, causing the death of and injuring plaintiff's cattle; and for loss of the use of land. Plaintiff recovered. From judgment thereon, defendant appeals.—*Reversed.*

*F. W. Ellis* and *Pascal & Pascal,* for appellant.

*W. J. Keefe* and *E. L. Miller,* for appellee.

ALBERT, J.—The plaintiff owned or occupied a 93-acre tract of land close to the defendant town, in which, at the time of controversy, he was pasturing 65 head of cattle and a herd of hogs. Through this land was constructed a county drain. The defendant town lies to the north and east of the land of the plaintiff. About 1912, defendant established a sewer system, with a disposal plant. The outlet of this sewerage system was through a

tile drain, thence into an open ditch, and into the ditch constituting the improvement in a drainage ditch running through plaintiff's land.

On the morning of July 16, 1923, plaintiff discovered that his cattle were suffering from some physical ailment. One of them was dead at the time; many were sick; some afterwards died; others lost flesh. It is for this damage that plaintiff seeks recovery herein. He bases his action on the proposition that the defendant town failed to properly care for its disposal plant, and by that means permitted the same to overflow, and to contaminate and poison the water; and that for this cause his cattle contracted the disease from which they died or suffered.

It seems to be undisputed in the record that the disease from which they suffered was hemorrhagic septicæmia. On discovery of the condition of the cattle, four state veterinarians were called, or came to inspect and investigate the condition of the cattle; and as we view this case, it must largely turn upon the testimony of these witnesses. One of these veterinarians, Spence by name, says:

"I found the cattle died with hemorrhagic septicæmia. This disease is caused by an organism, a bacteria. It is contracted by taking into the system bacteria that cause the disease,—usually through the digestive tract. This disease could be contracted by drinking contaminated water, or water contaminated by sewerage. I examined the pasture. We were looking to find causes of infection. I was making this inspection at the request of the state of Iowa. We could see no source of contamination outside of the stream. By seeing nothing, I mean nothing to cause this disease. The bacteria that produces this disease may come from any kind of pollution or organic matter. It might come from sewerage, decayed vegetation, or it might come from excrement of hogs, or any other source whereby there is decayed organic matters. I was not able to determine from the post-mortem examination of these cattle, the actual cause of their death."

Wolf, another veterinarian, says:

"I helped to post three. We found hemorrhagic septicæmia and blood poisoning. This disease is an infectious disease. It is spread through decayed matter. We made examination of the

premises, to find the cause of their particular trouble. We could not find out anything unless it was through the polluted water from this stream. I think the infection from which these cattle died would be caused by decomposed matter of any kind. I do not know where the bacteria came from that caused their death.''

Odgers, another veterinarian, testified:

''In my opinion, these cattle died from hemorrhagic septicæmia. It spreads or is contracted through the digestive tract by eating or drinking anything that contains micro-organisms. If the organism is in polluted water by sewerage, and the organism is in it, it could be contracted by drinking the water. It might be in sewer water, or it might be in any water. It might be contained in decayed or decomposed organic matter. You might find it in any water at times. Vegetation falling into the water and decaying might contain the bacteria, but not necessarily. It is not necessarily found in sewerage. I do not believe it could be produced by excrement from hogs. I could not tell where the bacteria came from. I do not know whether it came from the water of the drainage ditch or vegetation or from roots, or was contained in anything else they ate at the feeding place. It is impossible to tell.''

McIntyre, another veterinarian, testified as follows:

''The cause of their death was hemorrhagic septicæmia. We were trying at that time to determine the source of this disease. We made an investigation of the premises for that purpose. We were not able to determine just what the source was. We did not find the source of that trouble unless it came from the water. Drinking water that had become polluted by sewerage from sanitary sewers would not probably cause the disease, unless it contained infection. Q. Would it be likely to contain infection? A. Not necessarily. It could, and could not. Q. Would you say that you could find no other source of contamination other than the water? A. I could not see any other than that. Q. What water do you mean? A. The drainage ditch through the pasture. The disease from which these animals died might have been caused by the presence of this bacteria in something they ate or drank. I cannot say what the particular source of the bacilli was at that time. It originates from soil or water. It does not originate from decom-

posed vegetation unless the seed of infection is in it. I think I have known it to arise from pasturage itself. We have no means of knowing. It might arise from hard feeds given cattle, aside from pasturage. This is one of the unknown things. The germs arise from some unknown source, and grow in decayed organic matter.''

The record further shows practically all of the surface drainage from the streets, yards, and stockyards in said town, everything on the surface draining down through the south part of DeWitt and down through to this same ditch, and the outlet into which the sewer ultimately empties. It carries away the surface water. There are no catch basins and no openings in the streets; nothing gets into the sewer system except that which passes through the houses. The surface drainage comes from the northeast, and crosses the Davenport highway almost directly east of the south end of the disposal plant, and from these takes a course southwesterly to the junction of the drainage tile, emptying into the county drain.

The plaintiff's theory of this case is that he suffered the damage of which he complains, because the city failed to properly care for its disposal plant, and thereby contaminated the water in the ditch running through his land; that his cattle, drinking said water, took into their systems the polluted or poisoned water; and that was the cause of their death or injury.

To entitle him to recover herein on this theory, he is confronted with two hurdles: First, he must show, either directly or circumstantially, that his cattle drank of this water, and that the water contained the germs of the disease from which the cattle suffered. Second, he must show, in the same manner, that these disease germs were placed in the water by reason of the alleged conduct of the defendant town. If he fails to vault either of these hurdles, he has not made out a case to go to the jury.

No analysis of the water was made, and no witness testified to it as a fact that the water contained the germs which brought on this disease. Neither does any witness give it as his opinion that the water contained the germs. The most that can be claimed for the testimony of any of the witnesses is that they say that it might have contained these germs. On the

other hand, the same witnesses say that the disease germs might
have come into the digestive tract of the animals from solid sub-
stances eaten.   One of the witnesses says that it might be con-
tained in roots or in decayed vegetation, or it might have been
taken up by the animals in the pasturage.   They also say that
the germs may be found in clear water or in cloudy or polluted
water; and several other sources are enumerated by the wit-
nesses.

As to the second proposition, the evidence seems to be
equally uncertain.   It shows, in the first instance, that the
drainage district No. 6 has an open ditch, into which, from
various places, tile drains empty, both at the place in contro-
versy and above the same.   It shows that the overflow water
from the streets and yards of the defendant town empties into
this drainage ditch through the same channel or about the same
place that the overflow from the sewerage disposal plant comes
in; and in this wash also is the wash that comes from the stock-
yards in said town.

There can be no dispute, under the testimony, but that,
from some cause, through negligence or carelessness, the dis-
posal plant of the city did not properly operate, and that the
same overflowed and the sewerage passed into the tile outlet and
thence into the drainage ditch; but the whole record is silent
when it comes to pointing out that these disease germs were cast
into this water from the sewerage disposal plant.   Balancing
probability, to say the most, it is equally as probable that the
germs may have been carried into the drainage ditch by lines
of tile coming, or by the overflow water from the stockyards
and the streets of the town, as it is that it came in by reason of
the overflow from the disposal plant.   This is the status of the
record, giving the plaintiff full benefit of all the evidence in the
case.

In the case of *Peterson v. Dolan*, 186 Iowa 848, at 855, in dis-
cussing an action for damages for communicating hog cholera,
we said:

"Quoting from some of the cases, and stating the rule
briefly, it is that, if the circumstances surrounding the case
do no more than indicate a possibility of the accident's happen-
ing because of a defective appliance, or if they are no more con-

sistent with the theory that the accident was due to some defect than with some other theory than the one charged, then plaintiff has not made out his case.''

In *Neal v. Chicago, R. I. & P. R. Co.,* 129 Iowa 5, we announced the same doctrine, and said:

'' 'A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such nature and so related to each other that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent merely with that theory, for that may be true and yet they may have no tendency to prove the theory.' * * * If other conclusions may reasonably be drawn as to the cause of the injury from the facts in evidence than that contended for, the evidence does not support the conclusion sought to be drawn from it. Verdicts must have evidence to support them, and the jury will not be permitted merely to conjecture how the accident occurred. In matters of proof they are not justified in inferring from mere possibility the existence of facts. If it appears that the facts and circumstances from which a conclusion is sought to be deduced, although consistent with that theory, are equally consistent with some other theory, they do not support the theory contended for'' (citing *Rhines v. Chicago & N. W. R. Co.,* 75 Iowa 597).

To the same effect, see *Ohlson v. Sac County F. M. F. Ins. Assn.,* 191 Iowa 479.

In *Ashcraft v. Davenport Locomotive Works,* 148 Iowa 420, at 425, we said:

''But where so many causes may have operated, for one of which defendant, the master, may be responsible, and for others not liable, the maxim *res ipsa* does not apply. And in such a case, if nothing more than the happening of the accident be shown, plaintiff has not made out his case. * * * The reason for this is that the burden is upon the plaintiff, not only to show some defect for which the master was responsible, but also to show that this defect was the proximate cause of the injury. These principles are well established by authority.''

As bearing on this subject, see *Asbach v. Chicago, B. & Q. R. Co.,* 74 Iowa 248; *Dingmon v. Chicago & N. W. R. Co.,* 194

Iowa 721, at 724; *Bothwell v. Chicago, M. & St. P. R. Co.*, 59 Iowa 192.

Measured by these rules already announced by this court, we find that the plaintiff herein failed to carry the burden placed upon him herein, and that the evidence is not sufficient to support the verdict.—*Reversed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.