ONEY SCHMIDT, Appellant, v. PERLE HAYDEN, Appellee.

MAY 15, 1928.

*Bush & Bush* and *Seerley & Clark*, for appellant.

*La Monte Cowles, C. M. Fischer*, and *Glenn F. Gray*, for appellee.

ALBERT, J.—It appears from the record that the defendant was the owner of a dwelling house located at 100 Sweeney Avenue in the city of Burlington. On June 1, 1922, defendant rented the house in question by oral agreement to one Mrs. Ida Carel, for residence purposes, and thereafter Mrs. Carel

and her family occupied the same. Plaintiff herein, Oney Schmidt, is the married daughter of Mrs. Carel, and, at various times during the occupancy of said property by the latter, lived with her mother, and paid her board. The accident out of which this ligitation arose occurred on June 15, 1924. It appears from the evidence that the house fronted north, and had a porch across the front, which was some 10 or 12 feet from the ground. Across the east end of the porch was a railing, consisting of a 2x4 near the floor, and certain uprights or supports, with a railing on top. The height of this porch seems to have been from 24 to 30 inches. It appears that the top railing became defective, and either rotted off or was removed, and, under instructions of the defendant, a piece of lumber was nailed in its place, with small nails, one end being nailed to the house. This piece of lumber not being sufficiently long to reach the corner post, a short block or other piece of lumber was nailed to it, and this piece nailed to the corner post.

That plaintiff, at the time in question, fell from the east end of this porch to the ground, and suffered serious and permanent injury, is not disputed. Plaintiff alleges two grounds of negligence, in separate counts of her petition: (1) Failure of the defendant, as owner of a dwelling house, to keep the premises in repair, as required by the Iowa Housing Law. (2) Negligence in making dangerous, defective, and insufficient repairs to a dwelling house, and thereafter renting it for residence purposes, without giving the tenant warning of the insufficiency and unsafe condition thereof.

The answer admits the ownership of the premises, and renting to Mrs. Carel under verbal lease, but alleges that by the terms of such lease the tenant agreed to make all necessary repairs, and also includes a general denial.

The door opening from the house to the front porch was about the middle of the porch, and the distance from the side of the door to the rail in question was about 18 inches. At the time of the accident, about 10 o'clock in the morning, the mother, Mrs. Carel, plaintiff, Wilbur Carel, brother of the plaintiff, and his wife were on the porch. Wilbur was sitting in a rocking chair, with his wife sitting on his lap. The rocking chair seems to have been about the middle of the porch, in front of the door. It appears that Mrs. Schmidt was standing

between the rocking chair and the rail in question, with her back to the house. Mrs. Carel wished to enter the house, and as she attempted to open the screen door, plaintiff stepped backwards, to get out of her way, and this accident occurred.

If we assume, without deciding, that plaintiff has established both grounds of negligence alleged, the real question, and the one upon which the district court seems to have based his decision, is whether or not, under the evidence in the case, the alleged negligence of the defendant was the proximate cause of plaintiff's injury. Before we turn to the evidence, some particularly well established rules of law may well be noticed.

We have established the rule that a scintilla of evidence is no longer sufficient to call for the submission of a case to the jury. *Meyer & Bros. v Houck,* 85 Iowa 319. The direction of a verdict, in its last analysis, is always a question of the sufficiency of the evidence. *First Nat. Bank v. Brown,* 197 Iowa 1376. It is equally true that this court is reluctant to set aside a finding of the lower court that the evidence is insufficient, but it will do so where the record warrants it. *Graham v. Chicago & N. W. R. Co.,* 143 Iowa 604; *Nelling v. Chicago, St. P. & K. C. R. Co.,* 98 Iowa 554.

Our conclusion is that, when a motion is made to direct a verdict, the trial judge should sustain the motion when, considering all of the evidence, it clearly appears to him that it would be his duty to set aside the verdict if found in favor of the party upon whom the burden of proof rests. *Meyer & Bros. v. Houck,* 85 Iowa 319; *Beckman v. Consolidation Coal Co.,* 90 Iowa 252; *Barnhart v. Chicago, M. & St. P. R. Co.,* 97 Iowa 654.

Where a witness gives his conclusion, without stating the facts supporting such conclusion, especially when it is one bearing upon, controlling, or determining the ultimate question in the case, this court is not bound by such conclusion. *Escher v. Carroll County,* 159 Iowa 627; *Patrum v. St. Louis & S. F. R. Co.,* 146 Mo. App. 332 (129 S. W. 1041); 22 Corpus Juris 728–733. In cases of this character, the wrongful acts of the defendant must have been the proximate cause of the injury. *Doyle v. Chicago, St. P. & K. C. R. Co.,* 77 Iowa 607; *Pearson v. Wilcox,* 109 Iowa 123; *Martinek v. Swift & Co.,* 122 Iowa 611; *Anderson v. Wapello Coal Co.,* 151 Iowa 479. Where it

is sought to establish by circumstantial evidence that the alleged negligence is the proximate cause of the injury, such evidence must exclude every other reasonable hypothesis. *Asbach v. Chicago, B. & Q. R. Co.*, 74 Iowa 248; *Neal v. Chicago, R. I. & P. R. Co.*, 129 Iowa 5; *Tibbitts v. Mason City & Ft. D. R. Co.*, 138 Iowa 178; *Kearney v. Town of De Witt*, 199 Iowa 530. We have also said that, where the evidence is in equipoise, the plaintiff must fail. *George v. Iowa & S. W. R. Co.*, 183 Iowa 994.

Another rule of this court is that the cause of the accident must be clearly shown, and cannot be left to speculation or conjecture. *Pearson v. Wilcox*, supra; *Martinek v. Swift & Co.*, supra; *Anderson v. Wapello Coal Co.*, supra.

In the testimony, Mrs. Ida Carel says, after describing the situation as we have hereinbefore described it:

"I wanted to go in and finish up my dishes, and she [plaintiff] stepped back, to let me pass; and as I started to open the door, the last I seen of her, she was falling off the east end of the porch. She stepped back to let me pass,—that is, toward the east. She landed on the ground. I went to her. She wasn't conscious."

A piece of wood purporting to be the rail on the east end of the porch was presented to the witness, and she testified in relation thereto:

"It was the railing on the east side,—that is, the railing that gave way when my daughter fell. I picked it up from the ground and showed it to Mr. Schmidt after that."

On cross-examination, this witness stated:

"Before I started to go inside, she [plaintiff] stepped behind me, so I could get through to open the screen. Wilbur hitched the chair forward, this way, so I could open the screen from the rocker, and I just got it open pretty nearly wide enough to go in, when something drew my attention, and I then looked around that way, and she was going overboard."

Wilbur Carel testified:

"Mrs. Schmidt was standing there showing us how to make a bead ring. My mother wanted to go in, and my sister stepped back a little bit, and that was the last that occurred before she fell off the porch, because the banister gave way. She was not leaning against it, or sitting on it, either. I saw my sister

going toward the ground, her face up. I never saw the banister fall. The banister was already on the ground, I guess."

The witness was then asked this question:

"State whether or not at the time of her fall she did anything, so far as you could see, other than simply step back, to let her mother pass," and he answered: "Well, I know that she stepped back just a little. After she fell, I just picked her up and carried her into the house. I went out and saw this rail lying there. That is the stick that was nailed to the banister, and the one that went down with her."

On cross-examination, this witness said:

"I never noticed whether there was anything wrong with the porch that morning. The first thing I saw was that my sister was going over backwards, and her face was up toward me. I don't remember whether she turned over as she went down. I seen her going, and got right up and started to her."

Frances Carel, wife of Wilbur, and sister-in-law of the plaintiff, testified:

"I don't remember what occurred just prior to her fall. I just seen her going down, is all. I didn't see anything wrong with the porch when we went out that morning."

Plaintiff testifies that she had no warning in regard to the condition of the porch; did not know there was any defect or weakness about it. She testified:

"I remember my mother, starting in the house; and when she started in, I stepped back. After I stepped back, the next thing I remember was just like as if somebody had taken a knife and punched in my back. When I stepped back, I was not trying to sit down on the railing, or anything of that kind. I just merely intended to step back enough to let mother by. When I felt as if someone were sticking a knife in my back, I was on the bed in the southeast room. When I became conscious, I had continuous hurting there all the time. I had no remembrance of going against the railing, nor of feeling the railing give way. I have no remembrance of anything that occurred after I started to step back there. I did not feel myself going down. I don't have any recollection of bumping into anything, or of anything giving way or falling. I don't remember going against the railing. Don't know whether it gave way or not. The last thing I remember is when I stepped back, for my mother to

pass. I remember stepping back, and that is all I do remember. That was just a short step. I don't know whether I was unconscious before I went off the porch."

This is all the testimony offered on this proposition, and, under the above well recognized rules, we feel that it is not sufficient to sustain the burden carried by the plaintiff of establishing that the negligence of the defendant was the proximate cause of plaintiff's injury. The district court did not abuse its discretion in directing a verdict for the defendant.— *Affirmed*.

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.