ERNEST WESTENBURG, Administrator, Appellee, v. A. T. JOHNSON, Appellant.

No. 43079.

December 17, 1935.

Rehearing Denied April 8, 1936.

Stipe, Davidson & Davidson, for appellant.

Stephens, Thornell & Millhone, for appellee.

Mitchell, J.—Ernest Westenburg, as administrator of the estate of his son Donovan James Westenburg, deceased, commenced this action against A. T. Johnson to recover damages for the death of his son. The case was submitted to the jury, which returned a verdict in the amount of $1,500, and Johnson has appealed to this court.

Appellee is a farmer, living in Page county. He had a family consisting of four girls and two boys. Donovan James Westenburg was the youngest son, and he was at the time of his death four years and twenty-seven days of age. Appellant is a farmer, living a little less than a mile west of the Westenburg farm. On the 28th day of August, 1933, Westenburg was shelling corn at his farm, and the appellant was hauling the shelled corn to the town of Essex, a distance of approximately 12 miles. Johnson had hauled one load on that day and had returned for another, between the hours of nine and ten in the morning. Ray Lindquist was also hauling corn. Upon delivering the first load and returning to the farm, the appellant backed his truck on the

north side of the Lindquist truck, which was being loaded. Johnson's truck was headed in a slightly northwesterly direction, but mostly west, with the rear end of the truck backed in close proximity to the corn sheller. In this position his truck was ready to be loaded. The sheller was standing east of the Johnson truck and was headed in a northerly direction. The corn being shelled was being scooped from the crib, which was east of the sheller, the crib being a double crib, with a runway between the two cribs. The doors opened in the runway on the west side, close to where the sheller was standing. The tractor which was furnishing the motive power was standing a considerable distance, probably fifty feet, in a southwesterly direction, from the south end of the corn sheller. The belt running from the tractor to the south end of the sheller was in a slightly northeasterly direction, and, the sheller being headed north, this formed an angle which served as a place for the trucks to back into and receive the shelled corn. In that position the trucks would be headed almost west, and, after being loaded, would move straight west through the farmyard to the road that ran in front of the Westenburg farm. The truck of Emil Read was parked a considerable distance away, almost directly northwest of the corn sheller. After Johnson backed his truck into position, the spout of the sheller was placed so that the corn ran into the box of the truck. Johnson got out of the cab of the truck and was talking to the Westenburg girls. The two small boys—Donovan, aged four, and Wendell, aged six—had been in the Lindquist truck, and, when it was loaded, they got out and got into the Johnson truck. How the boys were able to get into the box of the Johnson truck does not appear in the record. There was no ladder on the truck, and the height of the box from the ground was approximately six feet, but by some means these two youngsters of four and six climbed over the side of the box into the truck. Appellant went to the north side of the truck for the purpose of arranging the shovel so that it would not be covered with corn, and found the two boys in the truck, playing in the corn. They had already placed the shovel in a safe position, so Johnson did not get into the box of the truck. A little later he returned, when he saw the corn running out of the spout, got up into the truck, and told the two boys to leave or get out of the truck. They then disappeared over the side of the box. Johnson shoveled the corn to the front and rear of the truck to even up the load. After telling the two

youngsters to get out of the truck and they had disappeared over the side of the box of the truck, approximately thirty-five bushels of corn were shelled and run into the truck. Donovan Westenburg was not seen by any witness from the time that he was told to leave the truck until he was found run over, a distance of sixty feet from where the Johnson truck had been loaded with corn.

The uncontradicted evidence shows that Johnson remained in the box of the truck, leveling off the corn, until the truck was loaded; that this took anywhere from three to seven minutes, some witnesses testifying that it was loaded in three minutes, others in five to six minutes. But the facts show that thirty-five bushels of corn were shelled in that period of time; that it was at the end of the shelling in that part of the crib and that the corn was not being shelled as rapidly as it would have been, due to the fact that they were gathering up the remaining corn. Johnson testified that, after the truck was loaded and he had signaled to the operator of the tractor to stop the sheller, and while he was still on top of the corn in the truck, he looked around but did not see the children anywhere; that he could see the edge of the box of the truck all around and could see no hands or any parts of the bodies of either of the two boys; that he could see all the way around the truck except the northwest corner of the box; that there is a jog between the truck box and the cab, at the right front corner, and it was impossible for him to see whether or not the children were near that part of the truck. Johnson got off the truck on the south side and walked around and got into the left door of the cab, into the driver's position. The evidence varies as to the length of time that elapsed between the time that these two boys started to go over the side of the box of the truck and the time that the truck was ready to leave. The shortest time is three minutes and the longest time is seven minutes. Johnson put the truck in low gear and proceeded almost straight west. At a point sixty feet from where he started his truck, Donovan Westenburg was found injured. Johnson did not see Donovan after he told him to get out of the truck, nor did he know that Donovan had been injured until he returned from Essex after delivering the load of corn. Wendell Westenburg, after leaving the Johnson truck, got into the cab of the Read truck, which was parked north and west of the Johnson truck, waiting to back into position for the next

load of corn. Wendell ran into the house and told his mother that Donovan had been injured, and she immediately went out to the yard and found the child lying on the ground. She testified that at that time she saw the Johnson truck about a half mile from the place where she found Donovan. She picked up the youngster and took him into the house. A doctor was called immediately and it was found that the pelvic bone had been crushed and the skin on his hands had been scraped. From these injuries Donovan died shortly thereafter. There is evidence that they traced the marks of the truck which ran over Donovan Westenburg back from the spot where he was found lying to the place where the Johnson truck started after being loaded. This was a distance of some sixty feet.

The negligence which is here charged is as follows:

A. That the defendant Johnson at the time of and directly preceding said accident did not keep a proper lookout for the safety of Donovan James Westenburg, who was a minor four years of age, and did not exercise the precaution required by law, in seeing that he had climbed off of his truck and was in a safe position before starting his truck and moving away.

B. That the defendant Johnson did not make the proper inspection around and about his truck, before starting, to see that Donovan James Westenburg was safely off of and away from his truck before starting away.

C. That the defendant Johnson did not keep a proper lookout as he drove away, and drove his truck in such a careless and negligent manner that he did not see Donovan James Westenburg and thereby avoid running over his body.

At the close of the plaintiff's evidence the defendant made a motion for a directed verdict, on the ground that there was no showing that Johnson had been guilty of negligence.

We will first discuss grounds A and B, as they both relate to the failure to make proper inspection to ascertain whether or not the child was in a safe place before starting the truck.

The questions that confront us here are: ''Where was Donovan at the time that Johnson started his truck on the way to town? Was he in or near the truck at that time? And if Johnson made the inspection which the appellee claims he should have made, would he at that time have discovered this youngster in or near the truck?''

Let us see what the record discloses.

The witness Lindquist was the operator of the machinery. He heard Johnson tell the boys to get out of the truck. At that time he was walking along the belt, on the south side, two or three feet from the Johnson truck. After that he went back to talk to the father of the boys, and then walked back to the tractor. In doing so he passed within ten to twelve feet south of the Johnson truck and did not see either of the boys at that time. When the appellant signaled to Lindquist to stop the sheller, that his truck was loaded, Lindquist was on the tractor, approximately thirty feet west and a little south of the Johnson truck. In that position he could see the south side and the front of the Johnson truck, and Lindquist testified that he did not see either one of the boys.

After the boys had left the truck, a man by the name of Franz Forsgren, who had been working in the corncrib, came out of the crib to the sheller, crawled under the belt, which was running approximately thirty to thirty-two inches from the ground, passed between the truck and the sheller to the northeast corner of the Johnson truck, where he climbed up on top of the truck to where Johnson was working, and asked him if he would buy some tobacco for him when in town, and gave him the money with which to purchase it. Then Forsgren crawled back across the top of the truck and got off on the northeast corner. This was after the boys had left the truck. Forsgren was thus in a position, coming underneath the belt, to see under the Johnson truck, the east end of it, and the north end, with the exception of the jog between the cab and the box or the northwest corner. Forsgren testified that he did not see the boys either in getting up on the truck or in getting down.

Johnson testified before he got off the truck he looked around and did not see either of the boys, and that at that time he could have seen the hands of the boys if they were hanging from the top of the box.

It is the theory of the appellee that this four year old youngster was hanging by his hands from the top of the box at the northwest corner of the truck, in the jog that was formed by the cab and the box; that he was in that hanging position for the three minutes that it took to load the balance of the truck and to start it, and during the time that the sixty-foot distance to the place where the accident happened was traveled. We quote the

following from appellee's brief and argument as to his theory of the boy's position:

"The evidence shows that Donovan James Westenburg's hands were scraped and abraised on the inside of the palms and on the fingers, which shows that he probably was holding on to something and that he kept his hold as long as he could and so tightly that he actually scraped off the skin from his hands. He was undoubtedly holding on to the front end of the truck because when he was found in the truck track in a dying condition he was in the north track. * * * This makes it quite clear that he was run over by the right rear (north) dual wheels of the truck. In order for him to get into this position he must have fallen from some place where he would have fallen in front of said wheels. About the only place where he could have fallen in the position in which he did fall was at the front end of the truck box just to the right of the cab. There was some evidence by the appellant Johnson that he looked around the truck from a standing position on the top of his load near the rear end. From this position he could not have seen this boy as he hung in the position above stated. * * * After Johnson got behind the steering wheel in the left side of the cab of his truck he could have reached over to his right and opened the right cab door and looked out on that side of his truck. This he did not do. If he had done this he would have seen Donovan James Westenburg. * * * Johnson stated in his evidence that the front endgate of the truck, which is that part of the front end of the truck box just to the right of the truck cab, was flush from the top to the bottom. In other words, there were no nitches or depressions where Donovan could have maintained a foothold. That probably accounts for the fact that the skin on the palms and fingers of his hands were scraped and abraised because his entire weight was dependent upon his being able to hang on with his hands. The right running board, which is just below the right cab door of the truck, extends back a short distance and then there is a complete dropoff without any fender or other part of the truck to prevent Donovan from falling from his hanging position completely to the ground."

Thus we find it is the theory of the appellee that this four year old youngster was hanging by his hands from the top of the box, without anything upon which to brace himself, for a period

of time between three and seven minutes, and, in addition thereto, the time that it took the truck to travel the distance of sixty feet to the place where Donovan was run over. The appellee places him in this hanging position, directly to the right of the cab, at the northwest end of the box of the truck. The boy would have had to be in that position, because the evidence shows that the witnesses saw all other parts of the truck between the time that the child left the box of the truck and the time that he was found after having been run over, and they all testified that they did not see this child around the truck. But this is simply the theory of the appellee. There is not one word of evidence in the record that Donovan Westenburg was hanging in that position. More than that, there is not one word of evidence in the record that this youngster was in or near the truck at the time that Johnson started to town with his load. It seems almost impossible that this four year old child could have been hanging by his hands, unsupported, in the air, for the period of time that it took to finish loading the truck, start it, and travel the sixty-foot distance. The trouble with appellee's case is that there is no evidence that places this child in or near the truck at the time that Johnson started on his way to town—neither direct nor circumstantial evidence. And this court has said time and again that the cause of the accident must be clearly shown and cannot be left to speculation or conjecture.

This court said in the case of Reimer v. Musel, reported in 217 Iowa 377, 379, 251 N. W. 863, 864:

"The appellee's right to recover in this case is based entirely upon circumstantial evidence. Negligence may be based on circumstantial evidence, if the same reasonably supports the conclusion to be drawn therefrom. This court in a recent decision in the case of Stickling v. Chicago, R. I. & P. Railroad Co., 212 Iowa 149, 153, 232 N. W. 677, 679, said:

" 'The rule, well settled in this state, is that "a theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and are so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them." ' "

"Again in the case of In re Hill's Estate, 202 Iowa 1038, * * * said at page 1043, * * * 208 N. W. 334, 336, 210 N. W. 241:

" 'Negligence cannot be predicated on presumption or infer-

ence, and the proffered evidence in this case would raise collateral and remote issues and, as said in Adams v. Chicago, M. & St. P. R. Co., 93 Iowa 565, 61 N. W. 1059, ''would lead to all manner of complications.'' See, also, Gray v. Chicago, R. I. & P. R. R. Co., 143 Iowa 268, 121 N. W. 1097.'

''In the case of Schmidt v. Hayden, 205 Iowa 1369, at pages 1371, 1372, 219 N. W. 399, 400, this court said:

'' 'Where it is sought to establish by circumstantial evidence that the alleged negligence is the proximate cause of the injury, such evidence must exclude every other reasonable hypothesis. Asbach v. C. B. & Q. Ry. Co., 74 Iowa 248, 37 N. W. 182; Neal v. C. R. I. & P. Ry. Co., 129 Iowa 5, 105 N. W. 197, 2 L. R. A. (N. S.) 905; Tibbitts v. Mason City & Ft. Dodge Ry. Co., 138 Iowa 178, 115 N. W. 1021; Kearney v. Town of De Witt, 199 Iowa 530, 202 N. W. 253. We have also said that, where the evidence is in equipoise, the plaintiff must fail. George v. Iowa & S. W. Ry. Co., 183 Iowa 994, 168 N. W. 322.

'' 'Another rule of this court is that the cause of the accident must be clearly shown and cannot be left to speculation or conjecture. Pearson v. Wilcox, 109 Iowa 123, 80 N. W. 228; Martinek v. Swift & Co., 122 Iowa 611, 98 N. W. 477; Anderson v. Wapello Coal Co., 151 Iowa 479, 131 N. W. 684.' ''

In the case of Williams v. Cohn, 201 Iowa 1121, at page 1122, 206 N. W. 823, which is a case somewhat similar to the one at bar, this court, speaking through the late Justice De Graff, said:

''Some degree of negligence in cases of this character must be established, as the foundation of legal responsibility. Borland v. Lenz, 196 Iowa 1148, 194 N. W. 215. Negligence is predicated on duty and presupposes the omission to fulfill the obligation imposed. This duty is imposed either by statute or by rule of common law. It may be owed to an individual or to the public generally, but he who seeks damage for an injury sustained must predicate and prove that the damage arose, without fault on his part, through the omission of a person charged with a duty. Fisher v. Ellston, 174 Iowa 364, 156 N. W. 422.

''Three essential elements are involved in every case of actionable negligence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure by the defendant to perform that

duty; (3) an injury proximately resulting to the plaintiff from such failure.

" 'When these elements are brought together, they unitedly constitute actionable negligence. The absence of any one of these elements renders a complaint bad or the evidence insufficient.' "

In view of these legal propositions, let us examine the record to ascertain what facts were established when the appellee rested. That the appellant saw these youngsters in his truck is not denied; that he saw this four year old boy leave the truck, going over the side of the box; and that a period of at least three minutes elapsed from the time that the boy went over the side of the truck until the time that the truck was started. Not only did three minutes elapse, but the additional time it took this truck, heavily loaded with corn, to travel the distance of sixty feet, in low gear. Where was Donovan Westenburg at the time Johnson started his truck? Was he in or around the truck? Had Johnson looked, as the appellee claims he should have, would he have found this boy in or near the truck? There is not one word of evidence to prove that he would have found him in or near the truck. Where Donovan was at that time is not shown in the record. No one testifies that he saw the child after Johnson saw him leave the box of the truck. The only place that Donovan could have been on the truck, which is the theory of the appellee of his position, was hanging by his hands from the top of the box, directly to the right of the cab. But it is only a theory; only a guess. No one testified that Donovan was there. There is, in addition to the lack of testimony, the fact that the accident did not happen at the place where the truck started, but some sixty feet from that point. If the accident had happened at the place where the truck started, we would have an entirely different case than the one at bar, and under the holdings of the various courts the appellant might be liable for damages. But the accident did not happen at that place; it happened sixty feet from there. Whether or not Donovan Westenburg was on the truck during the time that it traveled these sixty feet, no one knows. Whether he ran out and attempted to jump on the truck after it was started, no one knows. He may have been some distance from the truck when it started, and may have run out and tried to jump on the truck when it was sixty feet from where it started.

It is just as reasonable to presume that Donovan did these things as to say that he was hanging by his hands from the northwest corner of the box of the truck during all that period of time. Where Donovan came from, and how he got under the truck and was run over at this place, sixty feet from where the truck started, no one knows, and no one knows whether Johnson would have ascertained that Donovan was in or near the truck, had he made the search which the appellee claims he should have made before he started the truck. There is a failure to prove that the injury proximately resulted from the negligence of the appellant properly to inspect his truck and to ascertain the whereabouts of Donovan Westenburg before Johnson started his truck, as alleged in the first two grounds of negligence.

The third ground of negligence is that Johnson failed to keep a proper lookout as he drove away. It is not claimed by the appellee that this boy was in front of Johnson's truck. The claim that Johnson did not maintain a proper lookout is based upon the fact that appellee says, after getting into the driver's seat, had Johnson looked out of the right door of the cab, he would have seen Donovan hanging by his hands from the top of the box. The trouble with this theory is that there is no evidence that Donovan was hanging by his hands, as appellee claims. Thus, if there was a duty imposed upon Johnson to look out of the right door of the cab before he started, even if he had so looked, there is no evidence to prove that he would have seen this young boy, because there is not one scintilla of evidence that the boy was hanging to the box of the truck, on the northwest corner. It is just as reasonable to believe that, after the truck started, after it had covered this distance of sixty feet, Donovan attempted to get on the truck and in doing so fell and was run over by the rear wheels of the truck.

Appellee cites the cases of Allen v. Des Moines Railway Company, 218 Iowa 286, 253 N. W. 143, and Webster v. Luckow, 219 Iowa 1048, 258 N. W. 685, recent decisions of this court, in which we have laid down rules to protect children traveling along public highways. But in Allen v. Des Moines Railway Company and in Webster v. Luckow the defendant knew of the presence of the child and took no precaution to prevent injury, whereas in the case at bar there is not one bit of evidence to show where this child was during the period of time that the truck traveled sixty feet. There is no claim here that the child ran in front of the

truck. Only the back wheels of the truck passed over the boy. It was a terribly unfortunate accident, but, before appellant can be held liable, there must be some proof that the injury occurred through some fault of his. Had there been evidence that the boy was in or near the truck at the time it started on its way to town, it would have been a different case, but there is no such evidence. The burden of proving negligence on the part of the appellant and that it was the proximate cause of the injury rested upon the appellee. He has failed to meet that burden. The motion to direct a verdict at the close of appellee's testimony should have been sustained, and the lower court erred in overruling same.

Judgment and decree of the lower court must be, and it is hereby, reversed and remanded.

The CHIEF JUSTICE, and ALBERT, ANDERSON, DONEGAN, PARSONS, RICHARDS, and POWERS, JJ., concur.