MAUDE ESTELLE HAYES, Executrix, Appellant, v.
LYLE G. STUNKARD, Appellee.

No. 46201.

JUNE 15, 1943.

Edward R. Boyle, of Clear Lake, for appellant.

Senneff & Duncan, of Mason City, for appellee.

MULRONEY, J.—▮▮▮ The tragic accident that resulted in Mrs. Verbeckmoes' death occurred about 5:30 p. m. on November 8, 1941. In some manner she was struck by defendant's truck, driven by Kenneth Knutson, and hurled to the parking in front of her own home in Clear Lake. She died about thirty minutes later in the doctor's office without regaining consciousness. In this suit, brought by the executrix against the employer of Knutson, plaintiff relied largely upon circumstantial evidence to establish the driver's negligence. Defendant's motion for directed verdict at the close of all the testimony, on the grounds that the evidence failed to establish the driver's negligence and Mrs. Verbeckmoes' freedom from contributory negligence, was sustained by the court. We will first examine the evidence tending to establish the driver's negligence.

Gertrude Verbeckmoes was a woman fifty-seven years old, weighing about 210 pounds. During the afternoon of November 8, 1941, she was riding in the front seat of a car owned and driven by Hattie Mason. Inez Curvo was in the back seat. Hattie Mason drove to the Verbeckmoes home and stopped at a point opposite the sidewalk entrance to the house, but across the street. The car was stopped on the right or west side of Second Street, facing south, and Mrs. Verbeckmoes got out of the front seat and stood alongside of the car for a moment. Inez Curvo handed her a small acorn squash and observed Mrs. Verbeckmoes go to the rear of the Mason car and step off the curb toward her own home across the street. Mrs. Mason then drove off in a southerly direction on Second Street to Mrs. Curvo's home. Both Mrs. Curvo and Mrs. Mason said they met no car coming from the opposite direction in driving five blocks down Second Street. The street was 30 feet wide from curb to curb. There was some snow on the ground but none on the paving or sidewalks.

In some manner Mrs. Verbeckmoes was struck by defendant's truck driven by seventeen-year-old Kenneth Knutson. It is practically undisputed that after the accident Mrs. Verbeckmoes was lying unconscious in about the center of the parking in front of her house and 55 feet north of the sidewalk entrance to the Verbeckmoes home. The maid in the house immediately north of the Verbeckmoes home heard the sound of the impact

when the truck struck Mrs. Verbeckmoes. When she came out on the parking where Mrs. Verbeckmoes was lying unconscious in a pool of blood, she saw Knutson, who was a little hysterical, and heard him say that "he didn't see her at all until just as he hit her."

The undertaker who placed her in the ambulance and the doctor who examined her immediately after the accident described the appearance of her body. They said:

"Her right leg was badly mangled and broken and the bones were protruding from the wounds some four or five inches. * * * Right across her right leg about midway between the ankle and the knee was plainly the imprint of where she had been hit by something, which imprint was three or four inches wide; there was an imprint of that kind there where she had been hit hard by something. * * * [The imprint] was right at the point of the break. * * * She had a bad cut on her scalp over the right ear—the scalp being cut clear through to the bone—there was evidence of contusion at the right temple—there were bruises there. * * * Her right hand * * * was bruised and black from her elbow to the tips of her fingers. * * * Her right shoulder was probably broken * * * [ribs on the right side of her body] were fractured. * * * There were minor bruises over quite a large area * * * and the right side of the body and abdomen, and above and about the right hip. * * * On the left side of her body I found nothing other than some minor scratches * * * [her left leg] was apparently normal * * * [her left hip] wasn't battered up at all or anything of that kind or broken or badly bruised. * * * [She died of] fracture of the skull and incidental shock."

The chief of police and two highway patrolmen testified that about 7 o'clock in the evening after the accident they measured the distance from the sidewalk entrance to the Verbeckmoes home to the pool of blood on the parking. The distance was 55 feet. They observed pieces of headlight glass near the curb on the parking on both sides of the sidewalk entrance to the house. Some of the glass was on top of the snow on the parking. More glass was distributed along the curb to the north. These officers examined the Stunkard panel truck that evening.

The right front headlight was broken and the glass found on the parking was identical as to quality, design, and thickness with the part of the glass remaining in the headlight. This right headlight was also "twisted and bent around some." The radiator grill on the right-hand side was broken upward and the fender was dented and bent in. "The radiator itself was touching the fan." The right portion of the bumper had a little bend in it "just to the left of where it fastens on the frame on the right hand side."

Defendant's entire evidence consists of the statement of Kenneth Knutson. At the time of the trial he was in the Navy. So the parties stipulated that if he were present he would testify that he was driving not to exceed 25 miles per hour, about four feet from the curb, as he approached the point of the accident. He then states:

"When I got to a point beyond the sidewalk entrance to the Verbeckmoes home—that is, between that entrance and town a short distance—I saw a lady in the parking in front of the Verbeckmoes home. She suddenly stepped from the curb and started quickly across the street. The first I saw her was on the parking just as she started westerly. I tried to swerve to the left to avoid hitting her, but she came in contact with my right front fender. I came to a stop within about 20 feet from the time I struck her."

The foregoing evidence presents the two theories of this accident. Plaintiff, in effect, contends that Mrs. Verbeckmoes was struck after she walked across the street in front of her home and after she was on, at, or next to the curbing at the sidewalk entrance to her home; that this is proven by the testimony of persons who saw her start across the street, by the glass at the sidewalk entrance near the curb, by the undisputed evidence of the injuries to the right side of her body, and by the evidence that she was thrown up on the parking; that excessive speed was shown by the fact that Mrs. Verbeckmoes was hurled or dragged 55 feet, and the radiator of the car and the bumper were bent back; and that failure of the driver to maintain a proper lookout was shown by the admission that he did not see her until just before he hit her.

Defendant's theory of the accident is in direct conflict with plaintiff's theory. It is all contained in Kenneth's statement. He says that she was standing on the parking and that she went west into the street and into the path of his truck. This means that, unless she was walking backward, she was struck on her left side. The undisputed evidence, however, is that her left side was barely scratched. Defendant's theory also puts the place of impact out in the street more than four feet from the curb. Kenneth stated he was driving four feet from the curb and that he swerved left before he struck her. The undisputed evidence is that after the collision her body was up on the parking. The defendant's theory, as shown by Kenneth's statement, places the point of impact north of the sidewalk entrance, but there is evidence that headlight glass was found on the snow at this sidewalk immediately after the accident.

It is the general rule that when the evidence fairly presents two theories as to the cause of an injury, and both theories receive rational and reasonable support in the evidence, then the question is for the jury. As stated in Carpenter v. Security Fire Insurance Co., 183 Iowa 1226, 1234, 168 N. W. 231, 233:

"The question for the court is not whether reasonable minds might differ as to which theory was better supported by the evidence, but whether the theory adopted, upon which liability is predicated, is so sustained by the record that a fair controversy exists as to whether or not it is, in fact, the true theory."

The trial court apparently found that plaintiff's testimony was of insufficient probative value upon which to base a finding that plaintiff's theory was the true theory of the accident. Appellee sounds the argument that this is true because plaintiff's testimony is circumstantial in character. But the court's duty, where one theory is sought to be established by circumstantial evidence, does not change. The court still has the duty to determine whether or not the evidence is such that it may, when fairly and honestly weighed and considered, produce a conviction in fair-minded men that the facts exist as contended for. The facts may be established by circumstantial evidence as well as, and sometimes better than, by the direct testimony of witnesses.

 Defendant argues that plaintiff's evidence of facts and circumstances does not create the inferences contended for in plaintiff's theory of the accident. In his brief he suggests Mrs. Verbeckmoes might have been carried on the bumper 20 to 50 feet before she fell off the bumper or, ''She could have been carried on the bumper or fender 20 or 30 feet and then rolled northward onto the parking when the truck was stopped. Or she could have been struck and then have rolled the entire distance to the parking.'' From these and other suggested theories defendant argues that the circumstantial evidence cannot be relied upon for it does not ''exclude every other reasonable hypothesis,'' within the rule announced in Schmidt v. Hayden, 205 Iowa 1369, 1372, 219 N. W. 399, 400, nor is it ''of such a nature * * * that it is the only conclusion that can fairly or reasonably be drawn,'' within the rule announced in Asbach v. Chicago, B. & Q. Ry. Co., 74 Iowa 248, 249, 37 N. W. 182, 183, but leaves the cause of accident to ''speculation or conjecture,'' within the rule announced in Westenburg v. Johnson, 221 Iowa 134, 141, 264 N. W. 18, 22.

In Gordon v. Chicago, R. I. & P. Ry. Co., 146 Iowa 588, 594, 123 N. W. 762, 764, Justice Weaver, speaking for the court, stated:

''The case so made is not to be disposed of by the suggestion that other reasonable theories may be advanced to explain plaintiff's injury. Even in a case depending on circumstantial evidence alone to establish negligence, the plaintiff is not bound to negative every other conceivable theory or hypothesis which ingenuity may invent to account for his injury. It is only where opposing theories are equally reasonable and equally consistent with the proved or admitted facts that plaintiff must fail as a matter of law.''

The foregoing rule announced by this court in Justice Weaver's opinion in the Gordon case has been quoted with approval in Jones v. Eppley Hotels Co., 208 Iowa 1281, 1291, 227 N. W. 153, and Allison v. Bankers Life Co., 230 Iowa 995, 1001, 299 N. W. 889, and other Iowa cases.

In Latham v. Des Moines Electric L. Co., 229 Iowa 1199,

1207, 296 N. W. 372, 375, this court, speaking through Justice Oliver, said:

"Plaintiff was not required to prove his theory of causation by evidence so clear as to exclude every other possible theory. The evidence must be such as to make that theory reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence."

See, also, Whetstine v. Moravec, 228 Iowa 352, 291 N. W. 425, and Boles v. Hotel Maytag Co., 218 Iowa 306, 253 N. W. 515.

We are of the opinion that the circumstantial evidence in this case meets the test required by law. The chain of facts proven by plaintiff's witnesses, largely uncontradicted, speaks convincingly in support of plaintiff's theory of the accident. Admittedly she was struck by defendant's truck. The broken and bleeding body showing injury only on the right side, the headlight glass at the sidewalk entrance, the distance of 55 feet from the sidewalk entrance to where the body lay after the accident, and the bent bumper and radiator on the truck are proven by plaintiff's evidence. From these facts fair-minded men could reasonably infer that plaintiff's theory is the only true one. Aiding the theory is the direct evidence that she was seen walking across the street to her home after alighting from the car parked opposite the sidewalk entrance and the res gestae admission of the driver that he did not see her until just as he hit her.

II. This brings us to the other general ground of the motion for directed verdict which the trial court sustained, that plaintiff failed to prove freedom from contributory negligence. We feel the question of contributory negligence was for the jury, under the rule announced in Hopkinson v. Knapp & Spalding Co., 92 Iowa 328, 332, 60 N. W. 653, 655, that:

"* * * it is proper for the jury to consider the instincts of men, which naturally lead them to avoid danger, as evidence of due care on the part of the person injured."

See, also, Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 249 N. W. 220; Hittle v. Jones, 217 Iowa 598, 250 N. W. 689, and cases cited. But defendant argues that this rule relat-

ing to the instinct of self-preservation does not apply because here the driver was an eyewitness.

■ The eyewitnesses whose testimony will defeat the presumption must be persons who, from their observation, are able to say what the deceased did or did not do in the observance of due care for his own safety. In the Lorimer case the driver of the car observed the deceased pedestrian's body after the impact and as the body was "going up over the left front side of the car." We there held the question of contributory negligence was for the jury under the no-eyewitness rule.

In the Hittle case it was also argued that the rule relating to self-preservation did not apply for there were eyewitnesses to the accident, but we stated [217 Iowa 598, 601, 250 N. W. 689, 691]:

"Nevertheless, if the witnesses who attempt to describe decedent's actions in a case of this kind did not see him during all the material moments of his actions, the inference of due care may be drawn under the rule relating to the instinct of self-preservation."

Here we have the testimony of the admission of the driver that he did not see her until just before he hit her. His own testimony was that he did not see her until after he had passed the sidewalk entrance to the home and she was then standing on the parking. The parking between the sidewalk entrance and the driveway was 40 feet long. He stated he was traveling not to exceed 25 miles an hour, four feet from the curb. If the truck was traveling 25 miles an hour, it would have traveled 36.6 feet in one second. Since he was beyond the sidewalk entrance and she was south of the driveway and upon the parking when he first saw her, he could have seen her for a fraction of a second only before he struck her. Such an eyewitness driver who testifies that he first saw the lady he struck and killed a fraction of a second before the impact is not such an eyewitness as will prevent the application of the self-preservation rule. See, also, the case of Davidson v. Vast, 233 Iowa 534, 10 N. W. 2d 12.

■ III. Plaintiff further contends that the court erred in not admitting the testimony of Inez Curvo and Hattie Mason as

to the finding of the acorn squash after the accident. The record discloses no offer of proof and we would not reverse on this alleged error. The trial court has a good deal of discretion in deciding whether such testimony is admissible. Johnston v. Calvin, 232 Iowa 531, 5 N. W. 2d 840. But nearly all of plaintiff's case was founded upon circumstantial evidence. Great latitude should be allowed in the reception of circumstantial evidence where a party must rely on that form of evidence to prove his theory. White v. State, 59 Fla. 53, 52 So. 805. There was evidence Mrs. Verbeckmoes had this squash in her hand when she started east across the street. Plaintiff's theory was that she was struck while facing east. Defendant's theory was that she was facing west at the time. Where the squash was found an hour and a half or two hours after the accident might be wholly insufficient to establish the place of impact, but it would tend to establish plaintiff's theory of the direction in which decedent was proceeding at the time she was struck. We think the evidence should have been admitted.

For all the reasons stated, the decision of the district court is reversed.—Reversed.

GARFIELD, C. J., and HALE, OLIVER, SMITH, and MANTZ JJ., concur.

BLISS, J., takes no part.