CASSIE RICKABAUGH, administratrix of estate of LORIN RICKA-
BAUGH, appellee, v. WABASH RAILROAD COMPANY et al.,
appellants.

No. 47699.

(Reported in 44 N.W.2d 659)

NOVEMBER 14, 1950.

REHEARING DENIED MAY 17, 1951.

Evans, Riley, Duncan, Jones & Hughes, of Des Moines, for appellants.

Steward & Crouch, of Des Moines, and N. D. Shinn, of Knoxville, for appellee.

SMITH, J.—Plaintiff is administratrix of the estate of her husband, Lorin Rickabaugh. On December 11, 1946, her decedent, while driving a truck belonging to Burton Zerley, over a crossing of defendant Wabash Railroad Company near Dunreath, was struck and killed by a train of said company, operated by defendant Davis as engineer.

Plaintiff sought damage for the death of decedent in the sum of $15,000 and an additional $1400 for property damage to the truck on claim assigned to decedent's estate by the owner. The jury at first returned a verdict of $16,530.12 which included $1375 for damage to the truck. This being in excess of the total amount prayed for, the defendants demanded the court declare a mistrial. The motion was overruled, the instruction on damage changed, the jury recalled, given the changed instruction and sent out for further deliberation. In seven minutes the jury returned with a verdict of $16,375 which included $1375 for property damage.

The collision occurred about eleven o'clock a.m., December 11, 1946, at a crossing at the south edge of the village of Dunreath, in the northeasterly part of Marion County, Iowa. The railroad at that point extends easterly and westerly. There was a passing track, the south rail of which was 15 feet south of the south rail of the main track. The road on which plaintiff's intestate was traveling runs south from the village (population about six families, twenty persons), crosses the railroad 800 or 900 feet away, passes through a gateway in the fence along the south side of the railroad right of way (96 feet from the south rail of the main track) and thence south 450 to 600 feet to and across a little stream. It then angles southwesterly part way up a hill to a point said to be "around" 1200 feet from the crossing and then turns along a ridge to the southeast, eventually arriving at a gravel pit near the Des Moines River.

This gravel pit has existed for many years, is privately owned and commercially operated. Six or seven of plaintiff's witnesses were or had recently been gravel haulers from it. Plaintiff's intestate on the day of the collision was coming north from the pit with a load of gravel in a truck belonging to his son-in-law. The day was clear, the road dry and free from snow. The freight train was approaching from the east. The truck was about the center of the track when struck, far enough that most of it was thrown to the north. Defendant was not instantly killed but died December 23.

I. Defendants first complain of an instruction giving plaintiff the benefit of the so-called "no-eyewitness rule" and the resulting presumption (or inference) of due care. They argue that because the fireman and head brakeman on the train saw the movement of decedent's truck from a considerable distance back to the point of collision the rule was not applicable.

Plaintiff responds that these were not "eyewitnesses" within the meaning of the rule as they saw only the movement of the truck and not the conduct of the driver and could not know what he did or failed to do in the exercise of due care for his own safety.

Plaintiff reduces her contention as to the no-eyewitness rule to the following statement: "The true test, and the only test, ever recognized by this court is not whether there were eye-

witnesses to the *accident*, but whether there were witnesses to the *conduct* of the decedent." We think however this formula does not reach the ultimate question presented here, viz: Whether evidence of the *movement of the vehicle* which decedent was driving is such evidence of *decedent's conduct* as to deprive plaintiff of the no-eyewitness rule.

The point has never been squarely presented and met in our own decisions so far as the diligence of counsel here and our own research reveal. It is sometimes facetiously said that any proposition can be supported by quotation from the Bible. In a more serious vein we may say both sides of the present controversy may (and do) find comfort in the language of our decisions respecting the no-eyewitness rule and our other (sometimes called "peculiar") rule which in damage actions casts on the party claiming damage on account of the negligence of his opponent the burden of alleging and proving his own freedom from contributory negligence.

It seems definite these two rules are somewhat related in origin. Mast v. Illinois Cent. R. Co., 8 Cir., Iowa, 176 F.2d 157, 162; Ames v. Waterloo & Cedar Falls R. Trans. Co., 120 Iowa 640, 646, 95 N.W. 161, 162. In the Ames case it is said the (no-eyewitness) rule "was introduced in order to avoid the evident injustice of such a doctrine [our contributory-negligence rule] in cases where there was no evidence whatever one way or the other as to the exercise of care by the injured party, and no such evidence was attainable by reason of the death of the party injured and absence of any proof as to the circumstances attending the injury. Greenleaf v. Illinois Central R. Co., 29 Iowa 14; Way v. Illinois Central R. Co., 40 Iowa 341. Where there is direct evidence as to the circumstances of the accident, the presumption is not to be entertained."

In the cited Greenleaf case (29 Iowa at page 48) it is said:

"It is always competent for the jury * * * to give due weight to those instincts which naturally lead men to avoid injury and preserve their lives. And hence, as these instincts, motives and feelings may properly constitute evidence * * * when, as in this case, it appears that the deceased was last seen proceeding with becoming care, with the usual light, to uncouple the cars, we say,

under such circumstances the jury might well presume care and caution on his part to save himself from harm. * * * To require a plaintiff to even show due care in such cases would in many instances impose the duty of showing negatively that he did not stumble by carelessness, or jump voluntarily into danger."

So much for the dawn of these sometimes troublesome rules. It must be admitted the subsequent light of noonday has not sufficed to illumine adequately all their dark corners which the ingenuity of counsel can lead us into. It may be a saner and more workable rule would have been to cast on defendant the burden of proving contributory negligence as a special defense, permitting each party the benefit of an initial presumption or inference of reasonable care. But these rules are too deeply rooted in our jurisprudence to be now disregarded. We must take them as we find them and do our best to apply them as new fact situations arise.

Counsel on both sides rely on general statements in our decisions where the exact distinction demanded here was either not involved in the facts or not urged upon us on appeal. Counsel for plaintiff, for example, quote the opinion in Hayes v. Stunkard, 233 Iowa 582, 589, 10 N.W.2d 19, 22, to the effect that the eyewitnesses "must be persons who, from their observation, are able to say what the deceased did or did not do in the observance of due care for his own safety," a perfectly adequate statement in a case involving the movements of a pedestrian but not always decisive as to the conduct of the driver of a car.

They cite Davidson v. Vast, 233 Iowa 534, 541, 10 N.W.2d 12, 16, but there seems to have been no contention in that case, as there is here, that the movement of decedent's car did not reflect his own personal conduct. The opinion discards the testimony of the eyewitness (defendant) as contrary to physical facts and holds his "opportunity to observe, when he looked, was so extremely limited that the weight of his estimate of speed [of decedent's car] was lessened."

Plaintiff does urge Prewitt v. Rutherford, 238 Iowa 1321, 30 N.W.2d 141, as a case where this identical point was urged. The opinion however does not so indicate. The decision was that the eyewitness did not see plaintiff's actions during the "material

moments" just before the collision. The eyewitness in that case may have testified as to the movement of plaintiff's car only, but the opinion does not suggest that as the reason the testimony did not constitute evidence of plaintiff's conduct. Instead it points out that at the time the witness passed plaintiff he was 75 to 100 feet behind defendant's truck which plaintiff's car ran into. That was the reason he was not an "eyewitness" within the meaning of the rule. The *time* of observation was not near enough to the moment of collision to be material.

In the instant case two witnesses testify they observed the movement of decedent's truck from the time it was approximately 65 or 70 feet from the crossing, going 15 to 20 miles per hour. They say they observed the truck up to the very instant of the collision and that it did not slow down or decrease its speed during that interval of time. There is no question of "material moments" here.

The witnesses were the fireman and head brakeman, sitting in the cab of defendant's engine. They say the engine of the train was about 200 feet from the crossing when decedent's truck first came into view and that the train was traveling at an estimated speed of 35 to 40 miles per hour.

It is true the witnesses expressly disclaim ability to see decedent as he sat in the cab of the truck he was driving. They could not say whether he turned his head or made any movement to indicate whether he looked or listened during the fateful interval in which he traversed the 65 or 70 feet before the collision.

But decedent was driving the truck. Testimony that the truck did not slow down or change its speed as it approached the crossing and up to the very moment of the collision *is* some evidence that he did not *do* anything for his own protection. Whether he looked and listened or not this constitutes some direct testimony he *did* nothing about it. Looking and listening alone do not constitute proof of due care if the knowledge gained is not translated into appropriate action. The presumption or inference that decedent was exercising ordinary care could not arise in the face of this testimony.

It is not for us to weigh the evidence. It is our duty only to determine whether there was substantial evidence of decedent's conduct during the relevant period of time preceding the col-

lision. In Hebert v. Allen, 241 Iowa 684, 689, 41 N.W.2d 240, 243, a case involving alleged recklessness of a defendant driver, we said:

"Defendants would have us hold there was no evidence here as to the driver's 'actions and conduct' from which an inference of recklessness could be drawn. This we cannot do. The movement of the car, under the record presented, was some evidence of the *conduct* of the driver."

The language of Judge Graven as trial court in Mast v. Illinois Cent. R. Co., supra (176 F.2d 157), is pertinent and persuasive:

"If it be conceded that Keith [fireman on defendant's train] was unable to observe the person of the decedent himself as to his specific conduct in the manual operation of the truck, the question then becomes reduced to whether or not one who observes the conduct of another exclusively through the movements manifested by the operation of an instrumentality such as an automobile can be an eyewitness to that person's conduct from the standpoint of eliminating from a plaintiff's case the benefit of the no-eyewitness rule." (79 F. Supp. at page 170.) "It is believed that in most cases, and that in the instant case, a witness to the movements and change of movement of a motor vehicle during the material moments in which it approaches a mishap in which the operator is killed is for all practical purposes and for purposes of eliminating the necessity of the invocation of the no-eyewitness rule, an eyewitness to the conduct of the operator and can give direct evidence as to facts of relevant conduct from which it can be determined whether or not the operator was or was not in the exercise of due care." (79 F. Supp. at page 172.)

The Eighth Circuit Court of Appeals, in affirming Judge Graven's decision quoted from above, observes: "In the present case the court ruled that the fireman was an eyewitness within the meaning of the rule. We cannot say that his ruling was contrary to Iowa law." Mast v. Illinois Cent. R. Co., 176 F.2d 157, 163.

In Hitchcock v. Iowa Southern Util. Co., 233 Iowa 301, 314, 6 N.W.2d 29, 36, as pointed out in the Mast case, where the train

crew testified as to watching the movements of the vehicle operated by decedent for whose death recovery was sought, we said: "But in the instant case there is direct testimony of the acts and conduct of decedent, of the manner in which he drove his car from the time he crossed the Wabash tracks until he reached the point of collision. The testimony of the witnesses and the physical facts preclude the application of the no-eyewitness rule."

Not much could be added by a review of our many decisions in which the rule has been discussed. We have quoted some decisions relied on by plaintiff. Defendants cite language from other cases to the contrary. In Brown v. McAdoo, 195 Iowa 286, 291, 188 N.W. 7, 9, for example, it is pointed out witnesses to the movement of decedent's car were deemed "eyewitnesses" within the meaning of the rule. The opinion says they "were looking at the car *and the men in it until the very instant of collision.* These three persons testified in regard to *the movements of the car.* * * * The fireman saw the car, and *observed the conduct of the occupants.*" (Italics supplied.) It is clear the writer of the opinion was making no distinction between the movement of the car and the conduct of the occupants.

The same may be said of the opinion in Hitchcock v. Iowa Southern Util. Co., supra. And in Shannahan v. Borden Produce Co., 220 Iowa 702, 711, 263 N.W. 39, 43, the no-eyewitness rule was denied application because of the presence of a witness to the movement of decedent's car, the opinion saying: "From these physical facts it might be inferred that the car driven by appellant's decedent was in view of Lake until the instant that it reached the point of collision; but, even if this be not exactly the case, there was at most a very brief interval of time, during which the Shannahan car could have traveled only a very short distance, while Lake did not have a view of it." No question was apparently in mind that testimony of the movement of decedent's car was not such evidence of decedent's conduct as to defeat application of the no-eyewitness rule.

We repeat, the distinction argued here on behalf of plaintiff has not heretofore been consciously passed on by us. We are of opinion however it is unsound under the record presented here.

II. What we have said is equally applicable to defendants' second assignment complaining of the court's admission of

and refusal to strike testimony concerning decedent's habit of care and custom in approaching and crossing railroad tracks. Such testimony is only admissible when the no-eyewitness rule applies.

This is argued by defendants and conceded by plaintiff. Both cite Frederickson v. Iowa Cent. Ry. Co., 156 Iowa 26, 135 N.W. 12, Ann. Cas. 1915B 224. Later cases are cited by one side or the other. See Hitchcock v. Iowa Southern Util. Co. (supra); Stark v. Tabor & N.R. Co., 161 Iowa 393, 142 N.W. 977; Platter v. Minneapolis & St. L.R. Co., 162 Iowa 142, 143 N.W. 992.

The admission of such testimony when there was eyewitness testimony was error.

III. Though our conclusion in Divisions I and II requires a reversal it seems proper to refer to other matters in view of a possible retrial of the case.

It is argued by defendants that in the absence of the presumption of due care arising where there are no eyewitnesses, plaintiff's evidence was insufficient to sustain her burden of proof of freedom from contributory negligence.

Unfortunately both sides were so engrossed in argument on the no-eyewitness rule that this situation received comparatively casual attention. Defendants almost take it for granted that without the benefit of the no-eyewitness rule and its attendant inference of due care, plaintiff had no evidence of freedom from contributory negligence. Attorneys for plaintiff, on the other hand, appear so sure of their right to the inference (of due care) that they apparently do not seriously argue the testimony upon which they rely.

These witnesses quite unanimously describe the crossing and the road in between the two sets of tracks (main line and passing tracks) as rough and full of chuckholes to such an extent as to require loaded trucks to go into "super-low" and reduce speed to three or four miles per hour in order to go across. They also describe the view to the east of one approaching from the south as obstructed by "tall weeds and shrubbery and limbs on trees that were pretty close to the right of way and tracks so you couldn't see very far down the tracks."

However, we are convinced that our decision on nonapplication of the no-eyewitness rule is decisive against plaintiff's right

under this record to go to the jury on the question of freedom from contributory negligence. Whatever could be said in favor of that right is answered by the opinion in Nurnburg v. Joyce, 232 Iowa 1244, 1252, 7 N.W.2d 786, 791, in which it is said:

"No matter what the condition of the crossing was, the evidence shows that the deceased crossed it frequently, and he must have known when he started that morning that he had to cross it, and its condition. We are unable to see how the crossing could be classed as a diverting circumstance * * *.

"If the view to the north from the crossing was obstructed, then there devolved upon Roger Nurnburg the duty to exercise the care and caution commensurate with the apparent danger."

In Dean v. Chicago, B. & Q. R. Co., 211 Iowa 1347, 1351, 229 N.W. 223, 225, it is said that "* * * at an obstructed crossing it is the duty of the traveler to exercise a greater degree of care and caution than is incumbent upon him usually, and that there may be such circumstances in a given case that common prudence requires the traveler to stop. It is elementary that, the greater the danger, the greater the care and caution necessary for him to exercise, to constitute ordinary or reasonable care."

The evidence on plaintiff's behalf here shows decedent had been hauling gravel over this crossing for an indefinite length of time, even before September 1946. Zerley, the owner of the truck and decedent's employer and son-in-law, says he started hauling in May.

This same witness gave the most definite testimony as to the view to the east of one approaching the crossing from the south: "Approaching the crossing from the south you would be 8 or 10 feet south of the sidetrack when you shifted gears. At that time you could see not over 300 feet. When you were on the sidetrack you could see possibly 400 feet to the east."

This was as favorable perhaps to plaintiff as any witness for plaintiff estimated it. One of her witnesses said: "I would have to be 15 or 20 feet south of the south track or passing track before I could see to the east a distance of 350 feet." Another testified: "I would have to be 10 to 15 feet from the track before I could look down the track 7 or 800 feet * * *. I would have to be 15 or 20 feet south of the south track or passing track before I could

756

see to the east a distance of 350 feet." Still another said: "When I got to the south rail of the south track I don't think I could see over 2 or 300 *yards* (sic) to the east." (Perhaps the witness meant 200 or 300 *feet*. And a fifth estimated: "As you crossed the south rail you could see probably 300 feet down, but you couldn't see clear to the curve until you got out onto the siding track."

These were all hauling gravel on the day of the tragedy. They agree substantially that the shift to low had to be made south of the passing or sidetrack and that from there the speed would be three or four miles per hour. The last one above-quoted had just come over the crossing traveling south and met decedent (coming down) a little less than a quarter of a mile south of the crossing but still 150 to 200 feet north of the top of the hill. He saw the train at that time, "I would say the train was about one-half mile from the crossing, maybe a little less."

Plaintiff's only argument is that "proof of affirmative acts of care is not necessary, and if the facts and circumstances surrounding the accident do not establish contributory negligence as a matter of law, the plaintiff is deemed to have made a prima facie showing of freedom from contributory negligence."

The complete answer here is that it is not applicable to the facts. The only testimony we have as to decedent's movement is that he drove directly in front of the approaching train, when under the undisputed testimony of plaintiff's own witnesses he could and should have seen it in time to stop and avoid the collision.

IV. Defendants complain that the trial court instructed as to statutory train signals required to be given for railroad-highway crossings, whereas there was an issue as to whether this crossing was a public crossing. There was no request by defendants for a determination or an instruction on the subject and the entire evidence indicates the defendant company treated and considered the crossing as a public crossing. The record shows it had complied with Code sections 478.1 and 478.18, I.C.A., which it need not have done if the crossing was private. No gate or fence prevented access to it from the north and there is evidence the county road maintenance man cared for the road down to the railroad from the north.

Defendants did not complain of that part of instruction 6 that told of the statutory duties relative to crossing signals but did object to the failure of instruction as to determination as to the nature of the crossing.

We think the record made out a prima facie case that the crossing was public and there was no evidence to prove otherwise. There was no error here.

Other assignments concern matters that probably will not arise on a retrial. We therefore do not discuss them. For the errors pointed out a reversal is necessary and it is so ordered.— Reversed.

MANTZ and MULRONEY, JJ., concur.

WENNERSTRUM, J., concurs, but does not approve the citing of Hebert v. Allen, 241 Iowa 684, 41 N.W.2d 240.

GARFIELD, C. J., and BLISS and OLIVER, JJ., dissent.

HAYS, J., takes no part.

HALE, J., not sitting.