Furnis Cable, appellant, v. Fullerton Lumber Company, Inc., et al., appellees.

No. 47919.

(Reported in 49 N.W.2d 530)

OCTOBER 16, 1951.

John R. DeWitt, of Griswold, and Wright & Kistle, of Council Bluffs, for appellant.

Jones, Cambridge & Carl, of Atlantic, and Hallagan & Lucier, of Des Moines, for appellees.

SMITH, J.—Plaintiff, on December 6, 1948, ordered a load of coal from defendant company to be delivered in the basement of his home. The same day defendant company's truck, with two and one-half tons of coal aboard, driven by defendant Wissler, came to the home. Plaintiff, on being notified, undertook (either on his own initiative or· at defendants' request) to direct the movement of the truck in backing up to the coal chute at the west side of the house. In the operation he was pushed back against the house and seriously injured.

He alleges proximate negligence of the driver and his own freedom from contributory negligence. The trial court overruled defendants' motions to direct verdict and submitted the case to the jury, but after verdict for plaintiff was returned, sustained defendants' motion for judgment notwithstanding verdict. Plaintiff appeals from the resulting judgment. The three fundamental questions always present in tort actions are the only ones involved on this appeal: Was defendant Wissler negligent? If so, was his

negligence the proximate cause of plaintiff's injury? And was plaintiff himself free from contributory negligence?

█ *Of course plaintiff had the burden of proof on all these issues. And equally well-established is the proposition that when the issues arise on motion as questions of law, plaintiff is entitled to have the evidence viewed in the light most favorable to him. We shall review the evidence with these rules in mind.

The Cable house faces north and had a bridal wreath hedge along its entire west side except for an opening at the coal chute. The ground slopes away to the west from the house. The coal chute is about at the middle of the west side of the house at an opening in the hedge about two feet wide. The mouth of the chute is cemented, has a four-inch curbing on three sides with an outside measurement of forty inches north and south and twenty-two inches east and west. Inside dimensions were thirty-two inches long north and south by eighteen inches east and west.

The hedge was about three feet wide at the top. The opening in it at the coal chute was narrower than the north-and-south length of the mouth of the chute.

The chute was open and defendant Wissler intended to back the truck and empty the coal into it. The truck is described as a two-ton Chevrolet equipped with hydraulic dump bed. It is operated by a hydraulic lift. "The loader raises the bed up and the load is dumped out of the back end."

There was some conflict in the evidence as to just how near the truck would have to be to the chute in order to function properly. Evidence for plaintiff was to the effect it was necessary to have the rear end approximately seven feet from the house; for defendants, that the back end of the truck had to be even with the outer edge of the chute. This was about the only factual dispute.

Plaintiff's evidence is to the effect that when Wissler arrived with the coal he asked for plaintiff and when plaintiff appeared asked him to direct him while he backed into position to dump the coal directly into the chute.

Plaintiff testified:

"I went downstairs to help him. * * * Charlie had moved the truck. It was parallel to the house and I asked him what he wanted. He told me to stand there in that break in the hedge so

he could see me and back the truck. There is a small opening in the back of the truck. He would have to be absolutely in line with this coal chute. I stood in the hedge where he told me.

"Mr. Wissler pulled the truck to the northwest, cut it too close and was out of line. Then I yelled and motioned for him to get it farther south. Then [he] pulled it up and didn't cut it as much and came in line as slow as the truck could run. * * *

"The truck, going as slow as it could, stopped almost, and suddenly accelerated. The rear end * * * was about two feet out from the west edge of the hedge * * *. He would have stopped probably six feet from the house, between six and seven feet he would have stopped at the edge of the hedge. * * *

"After the truck was backing toward me, I yelled: 'Whoa!' * * * as loud as I could three times in succession. The truck did not slow its * * * backward motion until it had pushed me into the house.

"As the truck came back towards me, when I couldn't get out, I grabbed the truck with both hands, attempting to stop it and I was pushed into the house * * *. This arm slipped out but this one stayed in. That's the reason for the injury. * * * I was floundering in this coal hole, at least with one foot."

The details of getting plaintiff's coat off, calling the doctor, getting him to the hospital, and the extent of his injury are immaterial here.

This is the only account of how the injury came about. Defendant Wissler testified as to the measurements and description of the truck. He says it had on chains that day, that the day was chilly and that there was snow on the ground "just enough to make it white."

He was not asked to explain how the injury occurred and plaintiff's account is the only one we have.

On cross-examination plaintiff said he stood in the break of the hedge directly behind the truck—"the only place you could be." When asked why he could not have stood out to the left-hand side of the truck so as to signal the driver and at the same time watch the chute, plaintiff answered: "After the truck had gotten so far it would be impossible to see the hole in the back end of it from a position on the side. * * * Back of the truck is the

only place you could stand to line it up. If you stood over by the side * * * you couldn't see the back end of it after it went by you."

. He also said when he was starting to direct he stood at the outer edge of the hedge "intending to step back behind the hedge and get out." Later: "I couldn't get out; the truck had pushed the hedge back enough so there was no alleyway between it and the house."

It was suggested to him on cross-examination that he might have ducked under the truck bed as there was "a four-foot clearance the bed could have hit the house before it would have hit" him if he had ducked. His reply: "I could have gone through the coal chute if I would have."

Plaintiff's wife and another lady in the house heard plaintiff "holler" and heard the hit or bump "that jarred the house."

I. The question of proximate cause in this case cannot be considered apart from the issue of defendant's negligence. That is, the evidence, if sufficient on the issue of negligence, would have to be held sufficient on the issue of proximate cause.

II. We think this testimony we have outlined was sufficient to carry both questions to the jury. It was said in an early decision of this court:

"As in the nature of the case, the plaintiff must labor under difficulties in making proof of the fact of negligence, and as that fact itself is always a relative one, it may be satisfactorily established by evidence of circumstances, bearing more or less directly upon the fact of negligence, which might not be satisfactory in other cases, free from difficulty and open to clearer proofs; and this upon the general principles of evidence, which hold that to be sufficient or satisfactory which ordinarily satisfies an unprejudiced mind. 1 Greenl. on Ev., §2." Gandy v. Chicago & N.W. R. Co., 30 Iowa 420, 421, 6 Am. Rep. 682, 683, quoted in Garrett v. Chicago & N.W. Ry. Co., 36 Iowa 121, 123.

Defendant Wissler offers no explanation of what occurred. It is attempted, on cross-examination of plaintiff (as to statements elicited from him in the hospital), to develop a theory that the wheels of the truck were spinning and then acquired traction, causing the truck to come back suddenly. And we are asked to

hold plaintiff has failed to make a case because this possibility is not directly negatived.

There is no testimony this really happened. There is, at most, evidence that plaintiff, long after the transaction, stated: "But what I think happened, there was some snow on the ground and I think that probably that truck was spinning some. I don't know. I wouldn't answer that. Chances are when it got up on that little grade there was where the wheels got caught and made it go a good deal faster. That is just a guess. That is about the only way it could have happened."

This was not admissible as affirmative proof of what actually occurred. It is to some extent perhaps an admission by plaintiff against interest; but is not an admission of fact—only the expression of a very much qualified opinion, still further qualified by further language, apparently read by the cross-examiner from a purported record of what plaintiff had said while in the hospital: "I don't know, I wouldn't swear to it."

This did not destroy the effect of plaintiff's factual testimony (uncontradicted) as to the movement of the truck which resulted in his injury. The case of McNabb v. Juergens, Iowa, 180 N.W. 758, 761, cited and relied on by defendants, does not require such holding. It merely says "the evidence of a witness is no stronger than the cross-examination makes it." Certainly it cannot be held here that this cross-examination required us to discard the uncontradicted and unexplained facts and hold them insufficient as a matter of law. We are not required—or permitted—to pass on the weight or strength of the evidence except to determine its sufficiency for submission to the jury.

III. It is true plaintiff's case rests in part on circumstantial evidence. While the testimony is direct and uncontradicted as to the truck's movements, no one testifies directly as to what the driver did or failed to do.

But he was at the wheel and in apparent control. His was the responsibility. Whether he caused the erratic behavior of the truck or failed to use due care to prevent such behavior can only be inferred from the circumstances.

Under the record, defendants owed plaintiff a duty in the operation of the truck. Whether he was there for his own or de-

fendants' benefit, or whether upon his own or defendants' initiative, is entirely immaterial upon the question of defendants' duty. Wissler, under the record, must have known he was there. That being true Wissler owed him the duty of exercising reasonable care and skill to avoid running him down.

█ The jury would have a right to infer that the movement of the truck reflected the driver's conduct, in the absence of any evidence to the contrary. Hebert v. Allen, 241 Iowa 684, 689, 41 N.W.2d 240; Rickabaugh v. Wabash R. Co., 242 Iowa 746, 752, 44 N.W.2d 659, 662. As was said in White v. Center, 218 Iowa 1027, 1033, 254 N.W. 90, 92: "If, before the plaintiff can make out a case, he must negative every possibility which might relieve the defendant from liability, it would be practically impossible to establish a case of negligence or recklessness against the driver of any automobile."

[6] What did Wissler do or fail to do? At this point the element of circumstantiality enters. The rule has been variously stated, but the most recent statements have been to the effect that when resort is had to circumstantial evidence plaintiff is not required to prove defendant's proximate negligence by evidence so clear as to exclude every other possible theory but only by such evidence as to make his theory *reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence.*" Latham v. Des Moines Elec. L. Co., 229 Iowa 1199, 1207, 296 N.W. 372, 375; Hayes v. Stunkard, 233 Iowa 582, 587, 10 N.W.2d 19, 22; Gordon v. Chicago, R. I. & P. R. Co., 146 Iowa 588, 594, 123 N.W. 762, 764; Whetstine v. Moravec, 228 Iowa 352, 362–365, 291 N.W. 425.

The only theory suggested here, alternative to the theory of Wissler's negligence, has already been referred to, viz., the theory that the driver lost control because of ice or snow on the ground. Whether, *if* that fact were established (and there is here no testimony to establish it) we could then say, as a matter of law, there was no sufficient evidence of negligence to create a jury question is academic. It might even then be a jury question as to whether the driver, in the exercise of due care, should or could have retained control so as to avoid injury to plaintiff. That we need not determine.

It is sufficient that under this record we cannot say, as a matter of law, the theory of negligence is not more probable than any other theory as to what caused the injury. We cannot say, as a matter of law, that defendants' theory is equally or more probable. Defendant driver was the one witness who could have accounted for the truck's erratic movement. He did not do so. Instead we are left to conjecture or surmise that there was sufficient ice or packed or slippery snow to have caused it. This we cannot do.

The heavy dual-wheel truck had on chains and a 5000-pound load aboard. There was no evidence of ice and little of snow. Defendant Wissler said: "I wouldn't say how much snow there was on the ground, just enough to make it good and white." Plaintiff's wife called it "a skiff of snow." There was a slight slope upward toward the house. The truck came clear back against the house with such force that two persons inside felt the impact—"or heard it and felt it."

It is of course possible Wissler lost control through no fault of his own. Plaintiff did not have to exclude every other possible theory. Hayes v. Stunkard, supra. But under this record the jury might well find that explanation not as probable as the likelihood he was careless.

IV. Nor do we think it can be properly held plaintiff failed to produce evidence of freedom from contributory negligence. It may be argued he placed himself in a position of danger or allowed himself to be so placed.

But the jury might reasonably find the only danger was from possible negligence of the defendant driver; that plaintiff had a right to rely on the driver exercising reasonable care; and that when he discovered his danger it was too late to escape because the hedge, pushed back by the truck against the house, effectually shut off all escape. We cannot say there is no evidence that this happened. Plaintiff testified it did happen.

Whether plaintiff could have directed the truck by standing out clear to one side, whether when he saw the truck was not going to stop he might have ducked under the end of it and escaped injury, whether he could have done something besides shouting and vainly—perhaps foolishly—trying to hold the powerful instrumentality back with his hands was all for the jury to say.

Presumably the jury, by its verdict, determined all these matters in plaintiff's favor. We think the trial court erred in returning judgment notwithstanding that verdict. There are no other questions raised on appeal. The judgment is reversed.—Reversed.

All JUSTICES concur.