JEAN SMITH, administratrix of estate of CHARLES ALLEN SMITH, appellant, v. DARLING & COMPANY, a corporation, et al., appellees.

No. 48210.

(Reported in 56 N.W.2d 47)

DECEMBER 16, 1952.

C. W. Antes, of West Union, and Geiser, Donohue & Wilkins, of New Hampton, for appellant.

Harris, Van Metre & Buckmaster, of Waterloo, and Alex Holmes, of Strawberry Point, for appellees.

GARFIELD, J.—This is a law action to recover for death of plaintiff's decedent in a collision between a panel truck driven by him and a semitrailer owned by defendant Darling & Company driven by defendant Sperfslage. The vehicles were traveling in opposite directions. After a jury verdict for plaintiff for $15,368, judgment was entered for defendants notwithstanding verdict on the grounds there was no evidence (1) the collision was caused by defendants' negligence or (2) decedent was free from contributory negligence, also (3) that it is pure speculation and conjecture as to how or where the collision occurred. Defendant had moved for directed verdict on such grounds at the close of the evidence. See rule 243(b), R. C. P.

Plaintiff's appeal presents the familiar question of the sufficiency of the evidence of defendants' negligence and dece-

dent's freedom from contributory negligence. Of course the burden of proof on both these issues rested on plaintiff. Under repeated decisions the evidence must be considered in the light most favorable to plaintiff.

Both decedent and defendant driver were alone. There were no other eyewitnesses. Decedent was killed in the collision. Plaintiff's case therefore rests wholly on circumstantial evidence. Under the rule to which we are firmly committed by many recent decisions the evidence must be such as to make plaintiff's theory of causation reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence. The evidence need not be so clear as to exclude every other possible theory. See Latham v. Des Moines Elec. L. Co., 229 Iowa 1199, 1207, 296 N.W. 372, 375; Hayes v. Stunkard, 233 Iowa 582, 588, 10 N.W.2d 19, 22; Cable v. Fullerton Lbr. Co., 242 Iowa 1076, 1082, 49 N.W.2d 530, 534; Roller v. Independent Silo Co., 242 Iowa 1277, 1285, 49 N.W.2d 838, 843; Stickleman v. Synhorst, 243 Iowa 872, 877, 52 N.W.2d 504, 507.

The collision occurred October 11, 1950, in daylight on a paved primary highway about four miles west of Strawberry Point near the east end of a bridge over a stream. The paving is 18 feet wide and it is about 18 feet between the concrete railings on each side of the bridge which is about 80 feet long. The bridge railings are about three feet high. Going east from the bridge the highway, which runs generally east and west, is substantially level and curves gradually (seven degrees) to the southeast. Going west from the bridge there is a more gradual curve (two degrees) to the southwest. Coming from the west toward the bridge there is a decline in elevation of 3.5 feet per 100 feet. Approaching the bridge from either side there is a clear view for about 1400 feet. Weather conditions were perfect except that there was a strong northwest wind.

Plaintiff's decedent was coming from the east in a 1941 half-ton Chevrolet panel truck carrying tobacco, candy and other merchandise. The truck of defendant Darling & Company, driven by its employee defendant Sperfslage, was coming from the west. It was a 1949 two-ton Ford semitrailer with a steel box eight feet wide, carrying a ton and a half of hides and bones.

The collision appears to have been caused mainly by the failure of one or both of the drivers to keep on the right side of the highway. So the principal controversy on the facts seems to be whether the collision occurred on decedent's (north) or defendant's (south) side of the highway. Defendant Sperfslage was the only witness for defendants. Other witnesses to whom we refer were called by plaintiff.

Latchaw, a state highway patrolman for nine years, arrived at the scene about 20 minutes after the collision. He found the panel truck lying on its top headed south across the roadway about midway of the bridge. The semitrailer was north of the highway headed northeast, its front 85 feet northeast of the northeast corner of the bridge. Latchaw found the windshield of the "semi" cracked, more on the left side, the left front fender and wheel damaged and bent, the heavy front bumper broken about two feet from the left end and the left door to the cab damaged.

Most of the damage to the panel truck (driven by decedent) was to its top and on its right side. Its front was not damaged except that the right front lamp was broken and there was a slight bruise on the left front fender. Neither running board was damaged. The frame on the right side was all right. The frame on the left side was bent over the left rear wheel, the left rear fender and left door were damaged.

Nine feet of the north rail of the bridge was broken off into the stream below by one or both of the vehicles. It was 42 feet from the east end of the bridge to the east side of the break in the north rail. The west side of the panel truck as it came to rest on its top was about even with the east end of this break. The bridge rail was of white concrete. Latchaw testifies there was white powder in a damaged place on defendants' left front fender and in the break on its front bumper (two feet from the left end). The white powder on the fender is plainly visible in one of the photographs received in evidence and certified to us.

Plaintiff contends this white powder on defendants' fender and bumper is evidence their vehicle struck the bridge rail on decedent's (north) side of the roadway just before the vehicles collided. Other circumstances which tend to support this con-

clusion are that the semi was much heavier than the panel truck and thus more likely to break off the rail, the "panel" came to rest just east (the direction from which it came) of the opening in the rail and the damage to the panel was not such as to indicate it could have caused the break in the rail. Then too practically all the debris from the wreck was east of where the panel truck lay although some candy bars and perhaps other articles were west of it.

Latchaw says "most of the debris was on the north half of the road and north shoulder." This also appears from a photograph taken by a newspaper man about 30 minutes after the collision. A panel from the right side of the panel truck lay on the north shoulder near the paving east of the bridge. The "bucket" seat of the panel truck was also just north of the paving about half way between the broken off panel and the bridge.

Tracks made by defendants' vehicle went off the north side of the highway 30 to 40 feet east of the bridge—east of where the seat lay—according to Latchaw. Most of the testimony regarding these tire marks was given by Bunting, a farmer who heard the crash and arrived first at the scene. They were faint marks starting at the center line of the paving about 8 or 10 feet east of the bridge and continuing northeast across the north half of the pavement toward the place where the semi came to a stop. The marks "kind of kept jumping until they hit the dirt."

Bunting cleared off much of the debris left on the pavement from the wreck. He testifies "There was some stuff all over, the glass was mostly where the panel lay." (We understand this refers to the panel broken from the Chevrolet, not to the vehicle itself.) Some cigarettes from the panel truck were on the south side of the pavement but "the biggest share" was on the north side. Bunting observed a groove about five inches deep along the north edge of the pavement east of the bridge. This witness asked Sperfslage what happened and was told "when we hit the glass started flying, I closed my eyes, that is the last I know of it." Photographs show the glass in defendants' left door was broken.

Sperfslage testifies that as he approached the bridge from the west he noticed the panel truck approaching from the east,

he was driving about 45 miles an hour and was much closer to the bridge than the panel was, as he approached he slowed a little, the driver of the panel was coming at great speed, he (decedent) started weaving back and forth three or four times, it was swaying then, his two right wheels went off the pavement on the north side just before the bridge, he pulled it back again, "then we came together just that quick."

Sperfslage says as he approached and crossed the bridge he was not on the north side of the highway at any time, the vehicles came together "on the east corner of the bridge, I was on my right side, he was over the center line on my side, I was blinded by glass, when I opened my eyes my truck had come to a stop on the north side of the highway. * * * The only damage to my truck was the left front and left wheel. There was no damage to the motor or frame."

On cross-examination Sperfslage testifies decedent pulled over in front of him on the south lane at the end of the bridge, the vehicles came together at the southeast corner of the bridge, the witness first applied his brakes just before the impact, his speed crossing the bridge was 40 miles an hour, perhaps less, decedent's speed was about 60 miles per hour. On redirect examination the witness says that as decedent approached the bridge he wavered from about a foot on Sperfslage's side of the highway to the "corner of the paving, sometimes off it."

Plaintiff offered a written statement signed by Sperfslage three days after the collision which says the other vehicle was 150 feet away when he first observed it, "Nearer the west end of the bridge, Smith [decedent] swerved over onto my side of the road and I ran into the side of his truck but I don't know which side. I momentarily lost control of my truck, but after I got across the bridge, I brought it to a stop on the north shoulder * * *."

When asked on cross-examination about the discrepancy between his testimony and the written statement as to which end of the bridge was the place of collision Sperfslage says he was mixed up in his directions, presumably when the statement was made. He admits however he read the statement the day he signed it. But on redirect examination he denies he then read the statement.

The above is a fairly complete statement of the evidence. As previously indicated, the trial judge held it was speculative and conjectural as to how or where the collision occurred and there was no evidence it was caused by the negligence of Sperfslage or that decedent was free from contributory negligence.

I. The first proposition plaintiff argues is that she is entitled to the benefit of the no-eyewitness rule on the issue of decedent's freedom from contributory negligence. The argument cannot be accepted.

The rule referred to is that where there is no eyewitness and no obtainable direct evidence as to what a decedent did or failed to do by way of precaution at and immediately before his injury there is an inference he was in the exercise of ordinary care for his own safety. Riedesel v. Koch, 241 Iowa 1313, 1316, 1317, 45 N.W.2d 225, 228, and citations; Mast v. Illinois Central R. Co. (Judge Graven), 79 F.Supp. 149, 165, affirmed 8 Cir., Iowa, 176 F.2d 157.

Perhaps we should add that the no-eyewitness rule may also apply where the injured person survives but is unable to testify to the occurrence because of amnesia resulting therefrom. Prewitt v. Rutherford, 238 Iowa 1321, 1328, 30 N.W.2d 141, 144, and citations.

Defendant Sperfslage was an eyewitness to decedent's conduct at and immediately before the collision and gives direct evidence regarding it. He testifies to conduct of decedent which, if believed, clearly tends to show lack of ordinary care during the material moments before the mishap. Where such evidence is given—indeed where it is obtainable—the no-eyewitness rule has no application. See Low v. Ford Hopkins Co., 231 Iowa 251, 253, 1 N.W.2d 95, 97; Spooner v. Wisecup, 227 Iowa 768, 772, 288 N.W. 894; Edwards v. Perley, 223 Iowa 1119, 1128, 274 N.W. 910; Vance v. Grohe, 223 Iowa 1109, 1115, 274 N.W. 902, 116 A. L. R. 332, and annotation 340; Shannahan v. Borden Produce Co., 220 Iowa 702, 710, 263 N.W. 39; Lindloff v. Duecker, 217 Iowa 326, 330, 251 N.W. 698. Attention is also called to Rickabaugh v. Wabash R. Co., 242 Iowa 746, 44 N.W.2d 659, and Schwartz v. Helsell, 243 Iowa 95, 97, 50 N.W.2d 573, 574, without committing to those opinions the judges who dissented

therefrom. (The judges who took part in Schwartz v. Helsell were equally divided.)

Hayes v. Stunkard, 233 Iowa 582, 589, 10 N.W.2d 19, 22, cited by plaintiff, is not in conflict with our conclusion. Decedent there was a pedestrian struck after dark by a motorist who said "he didn't see her at all until just as he hit her." We held he was not such an eyewitness as the rule under consideration contemplates.

In Davidson v. Vast, 233 Iowa 534, 541, 10 N.W.2d 12, 17, also cited by plaintiff, there was a collision between two motorists at an intersection. In an action to recover for the death of one, the survivor (defendant) testified he did not see decedent until he was 10 feet away. We held "Defendant was not such an eyewitness as renders the rule inapplicable. He did not see, and when he looked there was no opportunity to see, what decedent did or failed to do by way of precaution for his own safety." Here Sperfslage testifies to such conduct of decedent as Vast in the cited case had no opportunity to see.

II. The parties next argue the sufficiency of the evidence of defendants' negligence and decedent's freedom from contributory negligence.

The charges of negligence against Sperfslage which could have proximately caused the collision are that he failed (1) to give half the traveled way by turning to the right when meeting the panel truck, in violation of section 321.298, Code, 1950, and (2) to have his vehicle under control when approaching and traversing the bridge, in violation of section 321.288.

As defendants concede, one contention of plaintiff must be sustained—the testimony of defendant Sperfslage need not be accepted as a verity. See Davidson v. Vast, supra, 233 Iowa 534, 538, 10 N.W.2d 12, 15, and citations; Gearhart v. Des Moines Railway Co., 237 Iowa 213, 222, 21 N.W.2d 569, 574; Riedesel v. Koch, supra, 241 Iowa 1313, 1325, 45 N.W.2d 225, 232; Hutchins v. LaBarre, 242 Iowa 515, 526, 47 N.W.2d 269, 276. See also Hayes v. Stunkard, supra, 233 Iowa 582, 10 N.W.2d 19; Mast v. Illinois Central R. Co., supra, 79 F.Supp. 149, 175.

The jury was of course sole judge of the credibility of witnesses and its verdict indicates it did not believe Sperfslage's version of how the collision occurred. His testimony was weak-

ened by the showing he had made statements inconsistent with it. Of course disbelief in the testimony of Sperfslage did not relieve plaintiff from the burden of offering substantial evidence of defendants' negligence and decedent's freedom from contributory negligence.

■ It must be admitted the question whether this case should have been submitted to the jury is close. It must also be admitted it is a matter of some speculation and conjecture as to the precise manner in which the collision occurred. But we think it is not fatal to plaintiff's case that the exact position of the two vehicles or the exact manner in which they collided is not shown provided there is substantial evidence the collision occurred on decedent's side of the highway.

As stated in Potter v. Robinson, 233 Iowa 479, 481, 482, 9 N.W.2d 457, 458, "This collision involves two vehicles proceeding in opposite directions on the same highway. The crux of the case is, Which vehicle was on the wrong side of the road at the time of impact? * * * The evidence on this issue determines whether or not a jury question was presented." On the particular facts of the Potter case it was held there was insufficient evidence defendant's truck was on the wrong side of the road. Much reliance was placed on evidence of tire marks.

We cannot avoid the conclusion there is substantial evidence here the vehicles collided on the north side of the center line. Study of the record, including the photographs certified to us, convinces us reasonable minds could fairly conclude this is more probable than the theory the vehicles collided on the south side of the roadway, as Sperfslage testifies.

We have already referred to circumstances indicating defendants' semi collided with the north bridge rail where it was broken off. It is extremely unlikely this break was caused by contact from more than one of the vehicles. We think a finding would be warranted it is more probable the semi struck the bridge rail. In his written statement made three days after the collision Sperfslage says he momentarily lost control of his truck while crossing the bridge. While he was then under the impression the collision occurred near the west end of the bridge his counsel now admit it happened a few feet east of the bridge.

Sperfslage's loss of control of his semi on the bridge adds strength to the conclusion it struck the north rail.

Sperfslage testifies broken glass started to fly at the moment of impact. The testimony and the photographs show this broken glass and other debris were found mostly north of the center line. The broken panel and seat from the panel truck were on the north shoulder, the seat about 20 to 30 feet east of the bridge. Other wreckage was left on the north shoulder. Since there was "quite a severe wind from the northwest" debris could not have blown to the north. Papers and other light articles would have blown to the southeast.

Sperfslage says he applied his brakes just before the impact. It is a reasonable conclusion marks from his tires would show after brakes were applied. These marks commenced about 8 or 10 feet east of the bridge and continued across the north half of the pavement toward the place where the semi came to rest northeast of the bridge. The jury could properly have found the collision occurred more than 8 or 10 feet east of the bridge, about as far as the broken seat lay. These tire marks are also circumstantial evidence the vehicles collided north of the center line. Potter v. Robinson, supra, 233 Iowa 479, 487, 9 N.W.2d 457, 461, says, "Such evidence of tracks rises to the height of foot-print testimony when properly connected up with the vehicle."

As we have indicated, we feel a jury question was presented on the issue of defendants' negligence in failing (1) to give half the traveled way by turning to the right and (2) to have his vehicle under control when traversing the bridge.

Since, as we have explained, plaintiff is not entitled to the benefit of the no-eyewitness rule the issue of freedom from contributory negligence may present a closer question than that of defendants' negligence. However, we think evidence the collision occurred on decedent's side of the highway is substantial evidence he was in the exercise of ordinary care at the time. Thus testimony which raises a jury question on the issue of defendants' failure to give decedent half the roadway also raises a jury question on the issue of the latter's freedom from contributory negligence.

One circumstance that should be noticed in this connection is that while the principal damage to the semi was to the left front most of the damage to the panel was on its right side—its left side was not seriously damaged. This would indicate that the right side of the panel collided with the semi. This in turn would tend to show decedent turned to his left (south) before the collision occurred. However, we are not prepared to hold such conduct would be conclusive against plaintiff on the issue of freedom from contributory negligence. Such a maneuver may well have been made in an emergency, not of decedent's making, in an attempt to avoid a head-on collision at a time when nothing decedent could have done would have prevented the impact.

It is perhaps unnecessary to repeat again this language from Huffman v. King, 222 Iowa 150, 154, 268 N.W. 144, 147, "It is the well settled rule of law in this state that if there is any evidence tending to establish plaintiff's freedom from contributory negligence, that question is one for the jury. [Citations.]" See also Pierce v. Dencker, 229 Iowa 479, 484, 294 N.W. 781, 783.

Precedents are usually of comparatively little value in determining whether a jury question is presented on the facts of a particular case of this kind. See Hutchins v. LaBarre, supra, 242 Iowa 515, 524, 47 N.W.2d 269, 274, 275; Pierce v. Dencker, supra, 229 Iowa 479, 484, 294 N.W. 781, 783; Roberts v. Hennessey, 191 Iowa 86, 95, 181 N.W. 798, 802.

However, attention may be called to decisions that a jury question was made by circumstantial evidence, notwithstanding direct evidence for defendant, in cases of this nature. See Hawkins v. Burton, 225 Iowa 707, 281 N.W. 342 (where the collision occurred on a bridge 18 feet wide); Davidson v. Vast, supra, 233 Iowa 534, 10 N.W.2d 12; Hayes v. Stunkard, supra, 233 Iowa 582, 10 N.W.2d 19. See also Riedesel v. Koch, supra, 241 Iowa 1313, 45 N.W.2d 225. It is true the no-eyewitness rule was held applicable on the issue of freedom from contributory negligence in the Davidson, Hayes and Riedesel cases.

III. We hold it was error to enter judgment for defendants notwithstanding the verdict. It is unfortunate defendants' motion for new trial cannot also be adjudicated upon this appeal.

However that motion is for the trial court to rule upon. The disposition for us to make of the case appears to be governed by Brown v. City of Sioux City, 242 Iowa 1196, 1207, 49 N.W.2d 853, 859. The judgment for defendants is reversed, the jury's verdict is reinstated, the cause is remanded for ruling on the motion for new trial and, in the event such motion is overruled, for judgment on the verdict.—Reversed and remanded.

MULRONEY, C. J., and BLISS, OLIVER, WENNERSTRUM, HAYS, and THOMPSON, JJ., concur.